PRATHER, Presiding Justice,
for the Court:

INTRODUCTION

On March 20, 1990, a specially called Grand Jury indicted John E. Bell for racketeering under Miss.Code Ann. § 97-43-5(3) (1972). Bell was convicted by a jury, sentenced to four years in the custody of MDOC, and fined $15,000. Bell raises the following issues for review by this Court:
I. WHETHER THE OFFICE OF THE ATTORNEY GENERAL HAD LEGAL AUTHORITY TO EMPANEL AND SPECIALLY CALL THE GRAND JURY AND TO PRESENT ANY CHARGES TO THIS SPECIALLY CALLED GRAND JURY WITHOUT THE REQUEST FOR AID AND ASSISTANCE BY THE LOCAL DISTRICT ATTORNEY OR AT THE DIRECTION OF THE GOVERNOR OF THE STATE OF MISSISSIPPI?
II. WHETHER THE TRIAL COURT ERRED IN ITS RULING ON THE MEMORANDUM OF UNDERSTANDING BETWEEN BELL AND THE ATTORNEY GENERAL, RESULTING IN THE PREJUDICIAL ADMISSION OF IRRELEVANT OTHER CONDUCT, IN VIOLATION OF THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS AND ARTICLE 3, SECTIONS 14 AND 26 OF THE MISSISSIPPI CONSTITUTION?
III. WHETHER THE TRIAL COURT ERRED IN NOT HOLDING JOHN BELL IMMUNE FROM PROSECUTION PURSUANT TO § 99-17-27, MISSISSIPPI CODE ANNOTATED, IN VIOLATION OF THE FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS AND ARTICLE 3, SECTIONS 14 AND 26 OF THE MISSISSIPPI CONSTITUTION?
IV. WHETHER THE TRIAL COURT ERRED IN DENYING BELL INFORMATION ABOUT AND FROM THE GRAND JURY THAT INDICTED HIM IN VIOLATION OF THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS AND ARTICLE 3, SECTIONS 14 AND 26 OF THE MISSISSIPPI CONSTITUTION?
V. WHETHER THE TRIAL COURT ERRED BY ALLOWING THE STATE TO INTRODUCE TESTIMONY IT FAILED TO TIMELY PRODUCE IN DISCOVERY, PREJUDICING BELL AND DENYING HIM THE RIGHT TO DUE PROCESS, A FAIR TRIAL AND EFFECTIVE ASSISTANCE OF COUNSEL?
VI. WHETHER THE TRIAL COURT ERRED IN NOT DECLARING A MISTRIAL DUE TO A CONFLICT BETWEEN DEFENSE ATTORNEYS AND JOHN BELL?
VII. WHETHER THE TRIAL JUDGE ERRED IN NOT RECUSING HIMSELF FROM HEARING THE POST-TRIAL MOTIONS FILED IN THE CASE?
VIII. WHETHER THE TRIAL COURT ERRED IN FAILING TO ENSURE THAT ALL MATTERS AND PROCEEDINGS WERE TRANSCRIBED?
IX. WHETHER THE TRIAL COURT ERRED IN GRANTING JURY INSTRUCTIONS DIRECTING THE JURY TO FIND JOHN BELL GUILTY?
This Court will address the first two issues. The other issues are without merit and/or are procedurally barred.

STATEMENT OF THE FACTS

Prior to October 1988, John E. Bell, through Bell Music Company, owned and managed the proceeds of several video poker machines throughout the Vicksburg area. On October 8, 1988, Investigator Bill East *996 with the Attorney General’s office went to the Battlefield Truck Plaza owned by Bell, bought quarters from one of Bell’s employees, and was subsequently paid for the credits he had earned while playing video poker on one of Bell’s machines. Based on Investigator East’s experience, the authorities raided the Truck Plaza on October 10, 1988.
On November 22, 1988, Bell entered into identical service and maintenance agreements and promissory notes with the Elks Lodge and American Legion. These contracts provided that Bell would receive 5% of the gross proceeds towards the purchase of the video poker machines and 25% of the gross weekly proceeds towards the service and maintenance on the machines.
Thereafter, in February 1989, Bell and the Attorney General’s office reached an agreement entitled “Memorandum of Understanding” (“Memo”). The Attorney General’s office agreed not to prosecute Bell if he ceased his involvement with gambling operations in compliance with the spirit and letter of the Memo agreement. The Attorney General was not aware of the poker machine service and maintenance agreements that Bell had entered into with the Elks Lodge and the American Legion.
When the Attorney General became aware of these contracts, he asserted that the Memo agreement had been violated and requested that the Circuit Judge reconvene the Grand Jury of Warren County to consider indictments against Bell, which indictments were returned. Other relevant facts are discussed as they apply to the issues.
I. WHETHER THE OFFICE OF THE ATTORNEY GENERAL HAD THE LEGAL AUTHORITY TO EMPANEL AND SPECIALLY CALL THE GRAND JURY AND TO PRESENT ANY CHARGES TO THIS SPECIALLY CALLED GRAND JURY WITHOUT THE REQUEST FOR AID AND ASSISTANCE BY THE LOCAL DISTRICT ATTORNEY OR AT THE DIRECTION OF THE GOVERNOR OF THE STATE OF MISSISSIPPI?
The record reflects that the Attorney General requested in writing that the trial judge recall the grand jury. Thereafter, the trial judge recalled the grand jury which indicted Bell. Bell filed a pre-trial motion to dismiss the indictment, and asserted that the Attorney General did not have the authority to empanel a grand jury. The trial judge denied this motion.
Bell’s argument on this point fails because the trial judge recalled the grand jury — not the Attorney General. A similar argument was raised in Oates v. State, 421 So.2d 1025 (Miss.1982). In Oates, the defendant argued that, because the District Attorney had recalled the grand jury, the indictment in that case was improperly handed down. This Court held that the grand jury was “duly recalled by court order.” Oates 421 So.2d at 1028. The court further stated that (even though the District Attorney had selected the days that the grand jury would actually meet) the district attorney “was not recalling the grand jury.” Id.
Therefore, even though the Attorney General requested that the trial judge recall the grand jury, the Attorney General did not actually recall the grand jury. Rather, the grand jury that indicted Bell was duly impaneled by the trial judge. Furthermore, the Attorney General is “a constitutional officer possessed of all the power and authoiity inherited from the common law as well as that specially conferred upon him by statute. This includes the right to institute, conduct and maintain all suits necessary for the enforcement of the laws of the state, preservation of order and the protection of public rights.” Gandy v. Reserve Life Ins. Co., 279 So.2d 648, 649 (Miss.1973). Therefore, the Attorney General did not act improperly when he requested that the trial judge recall the grand jury in this ease. Such action was necessary to “institute” a criminal prosecution against Bell. For these reasons, Bell’s contention on this point is without merit.
II. WHETHER THE TRIAL COURT ERRED IN ITS RULING ON THE MEMORANDUM OF UNDERSTANDING BETWEEN BELL AND THE ATTORNEY GENERAL, RESULTING IN THE PREJUDICIAL ADMISSION OF IRRELE *997 VANT OTHER CONDUCT, IN VIOLATION OF THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS AND ARTICLE 3, SECTIONS 14 AND 26 OF THE MISSISSIPPI CONSTITUTION?
Bell was indicted based on allegations that he engaged in a pattern of racketeering activity encompassing an approximate span of time from October 10, 1987, until March 30, 1990. In March 1988, Bell and the State entered into a Memorandum of Understanding (“Memo”) wherein Bell agree to immediately cease and desist operation of any gambling activities within the State of Mississippi, including the placement for rent or lease or any control of video draw poker machines. In return the State agreed not to prosecute Bell as long as he complied with both the letter and spirit of the agreement.
Importantly, the Memo stated, “It is currently the understanding of this office that Mr. Bell has discontinued these gambling operations in Warren County.” The State claims that at the time of the signing of the agreement, they were unaware that Bell had contracted with the Elks Lodge and the American Legion Post for the sale and service of video poker machines. Subsequently, when the State became aware of these contracts, the criminal prosecution of Bell was initiated and an indictment was returned in March 1990.
Among Bell’s pre-trial motions was a “Motion to Quash the Indictment Because The Prosecution Is In Violation of an Immunity Memorandum Agreement Wherein The State Agreed Not to Prosecute The Defendant.” An extensive hearing was held on this motion, after which, the trial judge denied the motion to quash. He declined, however, to make a finding of fact on the question of whether or not Bell had violated the terms of the Memo, and held that this was a factual issue, to be decided by the jury. The trial judge reasoned that to rule on this question would be a decision regarding the ultimate issue of Bell’s guilt. Bell then moved for a bifurcated trial, and requested that the question of whether he had violated the Memo be decided by a separate trial. The court denied this motion, and held that the question should be submitted to the jury through instructions.[1] On appeal, Bell argues that the trial judge erred in denying the motion to quash the indictment.
Interpretation of the Memo agreement in this case is a question of contract law. “Questions concerning the construction of contracts are questions of law that are committed to the court rather than questions of fact committed to the fact finder.” Mississippi State Highway Commission v. Patterson Enterprises Ltd., 627 So.2d 261, 263 (Miss.1993). Therefore, the trial judge should have determined whether Bell violated the agreement, in order to determine whether the prosecution of Bell was properly before his court.
This Court remands for a hearing and determination from the trial judge as to whether Bell violated the Memo agreement, in order to determine whether the indictment was proper. Should the trial judge rule that Bell’s actions violated the memo agreement, then a new trial would be in order — such trial to be conducted in accordance with the applicable rules of evidence. Otherwise, if the trial judge finds that Bell's actions did not violate the Memo agreement, then the trial court should entertain a motion to quash the indictment.[2]

*998
CONCLUSION

This case is reversed and remanded for the trial judge, after evidentiary hearing, to determine whether Bell violated the terms of the Memo agreement. The other issues raised by Bell on this appeal are without merit.
REVERSED AND REMANDED.
PITTMAN, BANKS, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
DAN LEE, C.J., and MILLS, J., concur in result only.
McRAE, J., dissents with separate written opinion joined by SULLIVAN, P.J.

. Instruction D-26 reads "The Court instructs the jury that unless you find from the evidence beyond a reasonable doubt that John E. Bell did violate the agreement not to prosecute, entered into by John E. Bell and the State of Mississippi, then you must find John E. Bell not guilty.”

. It is noteworthy that the parties do not raise the question addressed in Danley v. State, 540 So.2d 619 (Miss.1988). In Danley, the defendant gave up a valuable right in reliance on an agreement — only to have the State subsequently renege. Danley, 540 So.2d at 622. The importance of this element of detrimental reliance was again recognized in Singleton v. State, 618 So.2d 1290 (Miss.1993). In Singleton, this Court held that "[a]bsent a guilty plea or some other detrimental reliance by defendant, the prosecutor was under no legal inhibition to revoke his agreement.” Singleton, 618 So.2d at 1291. The parties in the case sub judice, do not raise the issue; furthermore, there was no evidence of any kind that Bell relied on the agreement to his detriment. Rather, the question raised by the parties is whether the agreement was broken by the *998 defendant. For these reasons, this Court does not address the issue raised in Danley, 540 So.2d at 622.