# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-151


NAKIA EDMOND

VERSUS

PATHFINDER ENERGY SERVICES, INC., ET AL.


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, DOCKET NO. C-20093925
HONORABLE MARILYN C. CASTLE, DISTRICT JUDGE
**********

## SYLVIA R. COOKS
### JUDGE


**********

Court composed of Sylvia R. Cooks, J. David Painter and James T. Genovese, Judges.

## AFFIRMED IN PART; REVERSED IN PART AND REMANDED.


L. Clayton Burgess
605 West Congress Street
Lafayette, LA 70501
(337) 234-7573
COUNSEL FOR PLAINTIFF/APPELLANT:
    Nakia Edmond


Tobin J. Eason
Weiss & Eason, L.L.P.
P.O. Box 8597
Mandeville, LA 70470
(985) 626-5358
COUNSEL FOR DEFENDANT/APPELLEE:
    Pathfinder Energy Services, Inc.

**COOKS, Judge.**

Plaintiff-Appellant, Nakia Edmond, began working at the Broussard shop of Defendant-Appellee, Pathfinder Energy Services, Inc. Mr. Edmond was placed at Pathfinder through a temporary employment service. On October 6, 2008, Mr. Edmond became a full-time employee with Pathfinder.

On October 18, 2008, while on a break, Mr. Edmond was told by his supervisor to go back into the shop. It was a Saturday, and the only workers present were the four other members of the crew Mr. Edmond was assigned to. As he went inside, Mr. Edmond stated he was attacked by his supervisor and the three other workers on the crew. Mr. Edmond was forced to the ground and held there by two of the men. His pants were then pulled down, and one of the men took Mr. Edmond's penis and began attempting to make him ejaculate. According to Mr. Edmond, when the event was over, the four men were laughing at him and teasing him about the size of his penis.

Mr. Edmond stated he was extremely embarrassed and frightened by the event, and initially did not want to tell anyone about the attack. However, the news of the attack spread, and Mr. Edmond was approached by another worker who encouraged him to contact human resources. A few days later, he contacted human resources and also reported the attack to the Broussard Police Department.

Eventually, after an internal investigation and interviews with the participants, Pathfinder terminated the four individuals involved in the attack. Since the attack, Mr. Edmond has been under medical care and has been unable to return to work.

Mr. Edmond filed suit against Pathfinder and the four individuals who perpetrated the attack. Mr. Edmond asserted he was forced to work in a hostile work environment, and contended Pathfinder was vicariously liable for the intentional actions of its employees.

Pathfinder filed a motion for summary judgment, asking that Mr. Edmond's claims be dismissed because he could not prove a sexual harassment claim against Pathfinder. It was also alleged by Pathfinder that it was not vicariously liable for any of the individuals' actions and/or intentional torts.

A hearing on the motion for summary judgment was held. Mr. Edmond testified that in his limited time with Pathfinder, he saw several employees grab or slap one another's private areas as they would pass each other. One of the men who attacked him would regularly blow kisses at him. He stated his supervisor was aware of these incidents and that the highest ranking official at the Broussard plant engaged in similar activities. No attempt was made by any supervisory personnel at the Broussard plant to eliminate this type of activity.

The trial court granted Pathfinder's motion on the issue of liability under La.R.S. 23:332, stating as follows:

> The Court finds that Pathfinder had a policy in place, that the policy was explained to Mr. Edmond, that Mr. Edmond, by his own testimony, was aware that he could make complaints and, by his own testimony, knew that, if he did make a complaint, that people would be fired and the situation would be rectified.

> He did not make the complaint, and there is no evidence that the company otherwise knew of the incidents or should have known. So I am going to grant summary judgment on that issue.

The trial court then allowed the parties additional time to submit supplemental briefs pertaining to the vicarious liability issue. After receipt of the additional briefs, the trial court granted summary judgment dismissing Mr. Edmond's claims against Pathfinder in full. The trial court found Pathfinder was not vicariously liable because Mr. Edmond would not be able to show the conduct was performed within the scope of these individual's employment because there was no evidence that the tortious acts were primarily employment-rooted, incidental to the performance of the employees'

duties, or involved a risk of harm fairly attributable to Pathfinder's business.

Mr. Edmond appealed the judgment, contending the trial court erred in finding there were no genuine issues of material fact which precluded the granting of summary judgment on his hostile work environment claim and his vicarious liability claim.

## ANALYSIS

Appellate courts review summary judgments *de novo* under the same criteria that govern the trial court's consideration of whether a summary judgment is appropriate. *Schroeder v. Bd. of Sup'rs of La. State Univ.*, 591 So.2d 342 (La.1991). The mover is entitled to judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B).

### A. *Vicarious Liability.*

The Louisiana Supreme Court in *LeBrane v. Lewis*, 292 So.2d 216 (La. 1974), laid out the factors necessary to determine whether an employer has vicarious liability for the intentional torts of its employees. In *LeBrane*, a supervisor became dissatisfied with an employee, fired him, ordered him to leave the workplace and escorted him to the door. The supervisor and LeBrane engaged in a heated argument, which escalated into the supervisor stabbing LeBrane. The court held that the firing of the employee, which was the root cause of the hostility, was employment-related. Vicarious liability was imposed and the court stated:

> In short, the tortious conduct of the supervisor was so closely connected in time, place, and causation to his employment-duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interest.

-3-

*Id.* at 218.

The Supreme Court set forth four factors to be used in determining whether vicarious liability should be imposed:

(1) whether the tortious act was primarily employment rooted;

(2) whether the act was reasonably incidental to the performance of the employee's duties;

(3) whether the act occurred on the employer's premises; and

(4) whether it occurred during the hour's of employment.

It is not a requirement that all four of these factors be met before liability may be found. *Miller v. Keating*, 349 So.2d 265 (La.1977). The particular facts of each case must be analyzed to determine whether the employee's tortious conduct was within the scope of his employment. *Scott v. Commercial Union Ins. Co.*, 415 So.2d 327, 329 (La.App. 2 Cir.1982).

It is undisputed that the incident in the present case occurred during the course of Mr. Edmond's employment and on the employer's premises. Pathfinder's argument was that the incident was not within its scope of employment. However, after a *de novo* review of the record, we find there is, at a minimum, a genuine issue of material fact concerning whether the incident was within the scope of Mr. Edmond's employment. Several cases influence us in reaching this conclusion.

Pathfinder relies on *Baumeister v. Plunkett*, 95-2270 (La. 5/12/96), 673 So.2d 994, wherein a nurse was sexually assaulted by a supervisor in a break room while both were on the employer's time clock. The court applying the *LeBrane* factors, noted that the tort occurred during the hours of employment and on the employer's premises, thereby satisfying the third and fourth factors under *LeBrane*. However, the court held that the tortious act was not employment-rooted nor reasonably incidental to the performance of the employee's duties. Distinguishing *LeBrane*, the

court in *Baumeister* stated:

> The *LeBrane* court expressly noted that the "employee's tortious conduct occurred while the employee was at least partly actuated by his purpose of acting for his employer in the discharge of the recalcitrant co-employee, and it was reasonably consequent upon or incident to his performance of his employment function of hiring and firing sub-employees."

*Id.* at 997 (quoting *LeBrane*, 292 So.2d at 219).

The court in *Baumeister* found that the defendant's actions in precipitating unwanted sexual contact with the plaintiff did not further the employer's business and was not incidental to the performance of defendant's supervisory duties. Furthermore, the court found that the sexual assault was entirely extraneous to the employer's interest and did not involve the threat of the loss of employment. The court therefore held that defendant's acts were not employment-rooted.

We find the facts in the present case distinguishable from *Baumeister*. In the present case, Mr. Edmond was approached by his direct supervisor while cleaning his car. His supervisor asked Mr. Edmond if he was "trying to get him into trouble" and ordered him to go inside. As Mr. Edmond notes, if the supervisor believed Mr. Edmond was trying to get him into trouble, there is certainly a question of fact whether the attack that followed was retaliation for this perceived belief by the supervisor. Further, unlike in *Baumeister*, the supervisor's actions in ordering Mr. Edmond inside are unquestionably incidental to the performance of defendant's supervisory duties. The *Baumeister* court specifically noted the nurse who was attacked in the lounge went to that location of her own free will, and not at the behest of the nursing supervisor. There also was no threat of loss of employment to the plaintiff in *Baumeister*, whereas here Mr. Edmond had good reasons to believe he had no choice but to comply with this supervisor's request to go inside, or his job may have been in jeopardy.

In *Benoit v. Capital Manufacturing Co.*, 617 So.2d 477 (La. 1993), two workers got into a fight at a manufacturing facility because of a difference of opinion between the co-employees as to whether the back door to the facility should remain open during a cold spell. Citing *LeBrane*, our supreme court found the resulting battery was employment-rooted, since the issue was temperature in the workplace, a legitimate business concern. The supreme court found the resulting tort fairly attributable to the employer's business.

In *Turner v. State*, 494 So.2d 1292 (La.App. 2 Cir. 1986), four young women wished to join the Louisiana National Guard (LNG). After convincing the women that he had the authority to conduct a physical examination, a LNG recruiting officer committed sexual batteries against the women. The women sued the officer and the State of Louisiana as his employer. The court held that the recruiting officer was an employee of the state and, that under the *LeBrane* factors, the recruiting officer was in the course and scope of his employment when he committed the sexual batteries against the women.

In *Samuels v. Southern Baptist Hospital*, 594 So.2d 571 (La.App. 4 Cir. 1992), the employer was found vicariously liable when its employee raped a psychiatric patient in the employer's hospital. The court applied the *LeBrane* factors to make the determination, noting that it was unnecessary for all four of the factors to be met in order to impose liability upon the employer. Citing *Turner v. State*, 494 So.2d 1292 (La.App. 2 Cir. 1986), the court stated:

> If the tortious conduct of the employee is so closely connected in time, place and causation to his employment duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interests, it can then be regarded as within the scope of the employer's employment, so that the employer is liable in tort to third persons injured thereby.

The *Samuels* court also distinguished between liability in negligence cases and cases involving vicarious liability, stating that "vicarious liability is imposed upon the employer without regard to its own negligence or fault; it is a consequence of the employment relationship." *Id.* at 574. In *Samuels*, the intentional act of violence occurred on the employer's premises while the employee was on duty, satisfying two of the *LeBrane* factors. Discussing the other two factors, the court in *Samuels*, 594 So.2d at 574, stated:

> The tortious conduct committed by [the employee] was reasonably incidental to the performance of his duties as a nurse's assistant although totally unauthorized by the employer and motivated by the employee's personal interest. Further, [the employee's] actions were closely connected to his employment duties so that the risk of harm faced by the young female victim was fairly attributable to his employer, who placed the employee in his capacity as a nurse's assistant and in a position of authority and contact with the victim.

In rejecting the employer's argument the employee's conduct was not fairly attributable to employer's business, the court in *Samuels* concluded the employee's actions served the employer's interest to the degree that they were incidental to the performance of his duties, even if "motivated by the employee's personal interest." *Id.*

In *Griffin v. Kmart Corp.*, 00-1334 (La.App. 5 Cir. 11/28/00), 776 So.2d 1226, a store employee shot an air pistol at two customers. The concussion to the chest of one of the customers damaged the settings on her pacemaker and required her to get the pacemaker reset. In addition, the customer suffered extreme anxiety because the incident revived memories of the death of her son, who was killed by a gunshot wound. The customers sued Kmart, claiming it was vicariously liable for the intentional acts of its employee.

The issue in *Griffin* concerned whether the employee was within the "scope of employment" at the time he assaulted the customers. The court concluded "[t]he fact

that Kmart presumably would not have condoned [the employee's] firing the air pistol at plaintiffs did not remove that act from the scope of his employment. We find that [the employee]'s conduct was connected closely enough to his employment to make it fair that the loss be borne by the enterprise." *Id.* at 1233 (citation omitted). Thus, the court found Kmart vicariously liable for the employee's assault.

In *Wearrien v. Viverette*, 35,446, p. 4 (La.App. 2 Cir. 12/5/01), 803 So.2d 297, 301, the court more fully discussed the character of the connection of the employee's act to the employment purpose:

> It is not determinative that the predominant motive of the tortfeasor servant is to benefit himself or a third person, for such a motive does not prevent the act from being within the scope of employment. Rather, the courts will look to see if the purpose of serving the master's business actuated the servant to any appreciable extent. If so, the master is subject to liability if the act is otherwise within the service. *Ermert v. Hartford Insurance Company*, 559 So.2d 467 (La.1990); *Dickerson v. Piccadilly Restaurants, Inc.*, [99-2633 (La.App. 1 Cir. 12/22/00), 785 So.2d 842].

Under this rationale, the argument that the sexual attack perpetrated upon Mr. Edmond was motivated by personal considerations extraneous from Pathfinder's interests does not, in and of itself, insulate Pathfinder from liability. In the present case, the attack occurred only after the supervisor ordered Mr. Edmond inside, where his co-employees were seemingly lying in wait. This is not the situation presented in *Baumeister*, where the tortfeasor employee was not serving the interests of the employer to any appreciable extent. Here the employee was using his supervisory powers to direct Mr. Edmond to the location where the attack occurred. Thus, at a minimum, there is a question of fact whether the eventual attack was employment-rooted.

We find, as the court in *Samuels* did, it is not so far-fetched that a factfinder cannot conclude that the tortious conduct committed by the supervisor in this case

was reasonably incidental to the performance of his duties, even if "totally unauthorized by the employer and motivated by the employee's personal interest." *Id.*

Lastly, we also note the case of *Brumfield v. Coastal Cargo Co., Inc.*, 99-2756 (La.App. 4 Cir. 6/28/00), 768 So.2d 634, *writ denied*, 00-2293 (La. 10/27/00), 772 So.2d 658, where a dispute occurred between a truck driver and a forklift operator over when a truck was to be loaded. The driver addressed the forklift operator in a vile and derogatory way. The forklift operator then grabbed a hammer and struck the driver in the head. The men then exchanged punches until the fight was broken up. In finding the employer vicariously liable for the intentional act of the forklift operator, the appellate court noted that the policy manual given to employees contained a provision which prohibited "[f]ighting or assaulting any person while at work or at any time and under any circumstance." *Id.* at 641. The *Brumfield* court specifically found the "inference to be drawn, therefore, is that the possibility of fighting was a risk of harm fairly attributable to [the employer's] business." *Id.* at 641. While some may argue the fourth circuit's reasoning punishes employers who are diligent in forewarning employees not to engage in inappropriate conduct, nevertheless the holding in this case exists and writs were denied by the Louisiana Supreme Court.

The Pathfinder employee handbook specifically notes that "[a]cts of violence will not be tolerated." Also, in the section, Prohibition of Workplace Harassment, the manual provides "[i]t is a violation of Company policy for any manager, supervisor, or employee to engage in such conduct or for any manager or supervisor to allow any employee to engage in such conduct or for any manager or supervisor or by a co-worker . . . ." Because the policy manual warns against acts of violence and

harassment in the workplace, under the reasoning in *Brumfield*, the possibility of violence and harassment at work is a risk of harm fairly attributable to Pathfinder's business.

We also note the *Brumfield* court in addressing the employer's argument that the name-calling and resultant violence was conduct motivated purely by personal considerations extraneous from the employer's interests, stated "even if one assumes [the forklift operator] was only angry about the name-calling, the fact remains that his employment as a lift operator . . . and [plaintiff's] job as a truck driver, is the reason the two men had contact that day." *Id*. at 640. Similarly, Mr. Edmond's job as a motor technician with Pathfinder, is the reason he had contact with the four attackers on that day.

B.    *Hostile Work Environment.*

The trial court also granted summary judgment on the issue of whether Mr. Edmond was forced to work in a hostile work environment pursuant to La.R.S. 23:332. The trial court granted summary judgment on this issue, finding Mr. Edmond was aware of Pathfinder's policy, but did not make any complaints. Thus, the trial court concluded there was no evidence that Pathfinder knew of the incidents or should have known.

Louisiana Revised Statutes 23:332(A) provides that it shall be unlawful for an employer to:

> (1) Intentionally fail or refuse to hire or to discharge any individual, or otherwise to intentionally discriminate against any individual with respect to his compensation, or his terms, conditions, or privileges of employment, because of the individual's race, color, religion, sex, or national origin.

> (2) Intentionally limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect his status as an employee, because of the individual's

race, color, religion, sex, or national origin.

As this statute is similar to Title VII of the Civil Rights Act of 1964, Louisiana courts have availed themselves of decisions found in federal jurisprudence when interpreting claims pursuant to La.R.S. 28:332. *Hicks v. Cent. La. Elec. Co., Inc.*, 97-1232 (La.App. 1 Cir. 5/15/98), 712 So.2d 656.

In order to prevail on a hostile work environment claim, a claimant must prove five elements: 1) he belonged to a protected group; 2) he was subjected to harassment; 3) the harassment was motivated by discriminatory animus; 4) the harassment affected a term, condition, or privilege of employment; and 5) that the employer knew or should have known of the harassment and failed to take proper remedial action. *Chaney v. Home Depot, USA, Inc.*, 05-1484 (La.App. 4 Cir. 8/16/06), 940 So.2d 18, *writ denied*, 06-2286 (La. 11/22/06), 942 So.2d 559.

In *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275 (1998), the United States Supreme Court discussed an employer's liability for a hostile work environment caused by a supervisory employee:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence. The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any . . . harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

524 U.S. at 777-78, 118 S.Ct. at 2278 (citation omitted). *Faragher* also explained that "[n]o affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." 524 U.S. at 808, 118 S.Ct. at 2293. The parties agree

that Mr. Edmond suffered no tangible employment action in this case; thus the affirmative defense set forth in *Faragher* is available to Pathfinder.

The trial court in this case specifically noted that Mr. Edmond was aware that Pathfinder had a harassment policy in place, but did not make any complaints. Thus, the trial court found that Mr. Edmond was unable to establish that Pathfinder knew or should have known of the harassment in question and failed to take prompt remedial action. The trial court held Mr. Edmond would be unable to meet its burden of proving at a trial on the merits that Pathfinder "knew or should have known of the harassment and failed to take proper remedial action."

In this case, Mr. Edmond testified in his deposition that his plant supervisors reported to Dan Langlinais, who periodically came to the Broussard plant. Mr. Edmond testified that when Mr. Langlinais was present at the Broussard plant, other workers did not misbehave and "were speechless." Mr. Edmond also testified that if Mr. Langlinais had been aware of the "slapping stuff" he would not have tolerated it, and "half the shop would have been fired." When asked if he had any "indication at all that [human resources] or management with Pathfinder knew that this slapping stuff was going on before [he] reported it," Mr. Edmond responded, "I don't think so, cause they probably would have did [sic] something about it."

Thus, considering Mr. Edmond's own testimony indicates he did not feel Pathfinder's human resources department or management had knowledge of the improper behavior by its employees at the Broussard shop, we cannot say the trial court erred in granting summary judgment as to Mr. Edmond's claim of a hostile work environment.

**DECREE**

For the foregoing reasons, the trial court's grant of summary judgment,

dismissing Mr. Edmond's claim of a hostile work environment under La.R.S. 28:332, is affirmed. However, the grant of summary judgment dismissing Mr. Edmond's vicarious liability claim is reversed and the matter is remanded to the trial court for trial on the merits. Costs of this appeal are assessed to defendant-appellant, Pathfinder Energy Services, Inc.

**AFFIRMED IN PART; REVERSED IN PART AND REMANDED.**