776 So.2d 1226 (2000)
Leeta Howard GRIFFIN, Beverlee Griffin Chivleatto and Kermit Chivleatto, Sr.
v.
KMART CORPORATION.
No. 00-CA-1334.
Court of Appeal of Louisiana, Fifth Circuit.
November 28, 2000.
*1229 Jack E. Truitt, Lionel J. Favret, III, The Truitt Law Firm, Madisonville, Louisiana, Counsel for Kmart Corporation, Defendant-Appellant-Appellee.
William G. Cherbonnier, Jr., Harvey, Louisiana, Counsel for Leeta Howard Griffin, Beverlee Griffin Chivleatto and Kermit Chivleatto, Sr., Plaintiffs-Appellees-Appellants.
Panel composed of Judges JAMES L. CANNELLA, SUSAN M. CHEHARDY and H. CHARLES GAUDIN, Judge Pro Tem.
CHEHARDY, Judge.
This is a personal injury suit in which plaintiffs sought recovery from Kmart Corporation for actions of one of its employees. All parties have appealed from a judgment that found Kmart liable and awarded damages. We amend and affirm.
On December 2, 1996 Leeta Howard Griffin and her adult daughter, Beverlee Griffin Chivleatto, were shopping at the Kmart store on Lapalco Boulevard in Marrero. They went up to the counter in the sporting goods department, where Kmart employee Robbie E. Brown was working, and asked Brown to perform a price check on an item. Brown did so, but then he removed an air pistol from a display case and fired it at Griffin. Brown fired the weapon directly at Griffin's right side, creating a loud noise and causing both plaintiffs to believe that Griffin had been shot. Brown then pressed the barrel of the gun to the chest of Chivleatto and fired it, causing a loud noise and striking her with sufficient force to result in a bruise on her chest. Both plaintiffs believed that Chivleatto had been shot.
Chivleatto is a heart patient who has a pacemaker. The concussion to her chest from the air pistol damaged the settings on her pacemaker and required her to get the pacemaker reset. In addition, however, Chivleatto suffered extreme anxiety because the incident revived memories of the death of her son, who was killed by a gunshot wound to the head in 1988.
Griffin, Chivleatto, and Chivleatto's husband, Kermit Chivleatto, Sr. filed suit on February 7, 1997 against Kmart. Griffin and Chivleatto alleged they suffered emotional damage and distress caused both by the gun being pointed and fired at them and by each witnessing the apparent shooting of the other. Kermit Chivleatto, Sr. claimed loss of consortium. Plaintiffs sought recovery against Kmart both for negligent hiring and for vicarious liability for its employee.[1]
At trial there was testimony from Evelyn Callaway, who was human resources manager at the Kmart store when Robbie Brown applied for employment there. Callaway testified she did not want to hire Brown because there were a couple of "red flags" against him; specifically, he had *1230 been terminated from his previous job at Wal-Mart relatively close to Christmas and he had a poor work record. However, her reluctance to hire Brown was overruled by the store's hard lines manager, Chris Prinz, because they needed someone in the sporting goods department.
Callaway also stated that employment applicants were required to complete a pre-employment questionnaire designed to provide a suitability rating, but that Brown did not fill out the questionnaire until after he had already been hired. Callaway said that Kmart policy required that the form be completed and graded prior to hiring. There was no such questionnaire in the records provided by Kmart at trial, however.
Callaway admitted that, of the past employers listed by Brown on his application, she checked with only the last employer, Wal-Mart. Brown stated on the application that he had been fired by Wal-Mart for returning from lunch ten minutes late. When she telephoned Wal-Mart, however, the only information given her was that Brown had been employed there, the dates his employment started and ended. Wal-Mart records provided at trial showed the reason for his termination from Wal-Mart as insubordination.
Callaway stated further that it was not Kmart's practice to check for criminal records of prospective employees; she said Kmart only did what they were required by law. She also admitted she did not contact any of the personal references he listed.
Marilyn D. Davis testified she was the sporting goods manager at Kmart while Brown was employed there. Her duty was to train him in departmental procedures, primarily rules and regulations concerning the sale of guns. She also showed him how to run the register, and how to assist customers. Davis said she gave Brown one day of training, or two at most. No one explained gun safety procedures to him. She stated there was no provision for gun-safety training of employees.
Davis testified that Kmart sells rifles, shotguns, BB guns, paint-ball guns, and ammunition, but not handguns. The guns are kept locked in a case, the key of which is accessible to the employee in the department and to store managers. A store security officer or a manager is called to be present when a gun is sold, in order to ensure that all paperwork concerning the sale is completed properly.
Davis said that after she trains employees, they then are under supervision of the assistant managers. She said Brown worked at Kmart for about five weeks before he was terminated. She had not heard of any other complaints against him. She said he was courteous and seemed to interact well with others.
Griffin and Chivleatto testified that they had no idea why Brown acted as he did. They had never met him and had no contact with him until Griffin asked him to check the price of an item she was holding. Griffin stated that, on advice of a police officer, they filed a complaint against Brown and he was charged with aggravated assault. She did not know whether there had ever been any disposition of the charges, except that she had never had to go to court for them.
The case was tried to a twelve-member jury, which returned a verdict finding that Kmart was negligent in the hiring, supervision or training of Robbie Brown, that the negligence was a proximate cause of damages to plaintiffs, but that Kmart was not liable for the intentional tort of its employee. The jury allocated fault 80% to Brown and 20% to Kmart. They awarded Leeta Griffin $3,000.00, Beverlee Chivleatto $15,000.00, and Kermit Chivleatto zero. Due to the apportionment of fault, the judgment rendered by the trial court awarded Griffin $600.00 and Chivleatto $3,000.00.
All parties have appealed.
On appeal Kmart contends that the jury erred in imposing liability on Kmart for *1231 the negligent hiring, training, and supervision of its employee where there was no evidence to support such a finding and that plaintiffs' numerous references at trial to a Kmart pre-employment profile prejudiced Kmart when no such profile was in evidence or shown to be in existence.
In the plaintiffs' cross-appeal they contend that the trial court and the jury interrogatories failed to apply to proper law relative to causation, that the trial court failed to apply the correct law of vicarious liability of an employer for its employee, and that the award of damages was clearly erroneous as being inadequate compensation for plaintiffs' injuries.

DIRECT LIABILITY
A claim against an employer for the torts of an employee based on the employer's alleged direct negligence in hiring, retaining, or supervising the employee generally is governed by the same dutyrisk analysis used for all negligence cases in Louisiana. Jackson v. Ferrand, 94-1254 (La.App. 4 Cir. 12/28/94), 658 So.2d 691, 698, writ denied, 95-0264 (La.3/24/95), 659 So.2d 496. The determination of liability in a negligence case usually requires proof of five separate elements: duty, breach of duty, cause-in-fact, scope of liability or scope of protection, and damages. Fowler v. Roberts, 556 So.2d 1, 4-5 (La. 1989). "The first element is usually a judge question, and the other four are usually jury questions unless reasonable minds could not differ." Id.
In this case it is clear there was a duty on the part of Kmart to exercise care in hiring and training an employee who would be working with and handling guns. When an employer hires an employee who in the performance of his duties will have a unique opportunity to commit a tort against a third party, he has a duty to exercise reasonable care in the selection of that employee. See Lou-Con, Inc. v. Gulf Building Services, Inc., 287 So.2d 192, 199 (La.App. 4th Cir.1973), writ denied, 290 So.2d 899 (La.1974).
The remainder of the questions under the duty-risk formula-breach of duty, cause-in-fact, scope of liability or scope of protection, and damages-are factual determinations by the trier of fact. Therefore, in order to reverse the jury's findings, we must find manifest error.
We find no clear error in the jury's determination that Kmart was negligent in the hiring, training or supervision of Robbie Brown. Regardless of whether Kmart was negligent in hiring Brown, there is no question that Kmart failed to provide training to Brown in handling the weapons he was responsible for selling and in appropriate behavior with customers regarding guns. Such failure was a breach of Kmart's duty. Providing an employee with access to guns provides that employee with a "unique opportunity" to cause injury to customers, regardless whether the employee's action is done negligently or with intent.
The fact that Brown had access to the guns was a cause-in-fact of the harm to plaintiffs. The risk of inappropriate, or even criminal, behavior with the weapons is within the scope of protection of that duty is designed to cover. There is no question that plaintiffs suffered harm-Griffin psychological harm, Chivleatto both psychological and physical.
Accordingly, we find no manifest error in the jury's determination that Kmart was negligent.
We find it unnecessary to address Kmart's assignment asserting that the trial court erred in admitting testimony regarding a pre-employment profile which was not in evidence. The testimony regarding the profile went toward the issue of negligent hiring. Because we have determined there was sufficient evidence of negligence in training to provide a basis for liability, it is superfluous to address negligence in hiring.

*1232 VICARIOUS LIABILITY
La.C.C. art. 2320 provides, "Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." This principle of law is comprised in the term respondeat superior, a form of vicarious liability.
This article imposes a type of strict liability upon the employer:
Liability is imposed upon the employer without regard to his own negligence or fault; it is a consequence of the employment relationship.... The employer's liability is secondary or derivative in the sense that the employer is not himself a wrongdoer or tortfeasor....
Although the employer and employee are not joint tortfeasors, they are nonetheless each obligated for the same thing total reparation of the damages to the victim. The derivative nature of the employer's liability is of no concern to the victim, and he can compel either the employer or the employee to compensate him for the whole of his damages.
Sampay v. Morton Salt Co., 395 So.2d 326, 328 (La.1981).
Crucial to application of this article, however, is a finding that when the employee committed the tortious act, he was working "in the exercise of the functions in which ... employed." La.C.C. art. 2320.
In determining whether an employer is liable for the acts of an employee, the factors to be considered are whether the tortious act was primarily employment rooted, reasonably incidental to the performance of the employee's duties, occurred on the employer's premises, and occurred during hours of employment. LeBrane v. Lewis, 292 So.2d 216, 218 (La.1974). Stated another way, the issue is whether the tortious conduct of the employee so closely connected him or her in time, place, and causation to his or her employment duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interests. Id.
It is not necessary that all the factors be met in order to find liability; each case must be decided on its merits to determine whether the conduct is to be regarded as within the scope of the employee's employment. Miller v. Keating, 349 So.2d 265, 269 (La.1977).
The fact that the primary motive of the employee is to benefit himself does not prevent the tortious act of the employee from being within the scope of the employment; if the purpose of serving the employer's business actuates the employee to any appreciable extent, the employer is liable. Ermert v. Hartford Ins. Co., 559 So.2d 467, 477 (La.1990).
In their cross-appeal, plaintiffs assert that the trial court failed to apply the proper law relative to causation in the jury interrogatories. Specifically, plaintiffs objected at trial to Jury Interrogatory No. 3, which stated, "Is Kmart liable for the intentional tort of its former employee, Robbie Brown?"
The jury answered "no" to that question. Plaintiffs contend the jury erred in failing to find that Kmart was vicariously liable for Brown's acts because Interrogatory No. 3 asks the wrong question and calls for a legal conclusion rather than a factual finding.
We agree. The appropriate question would have been whether Robbie Brown was in the course and scope of his employment at the time of the tort.
There is no question that Brown's act was performed in the course of his employment, because he was on duty working at the store in his assigned job when he assaulted plaintiffs. The issue is whether he was acting with the scope of his employment at the time. The scope of employment test examines the employment-related risk of injury. Benoit v. *1233 Capitol Mfg. Co., 617 So.2d 477, 479 (La. 1993).
The fact that Kmart presumably would not have condoned Brown's firing the air pistol at plaintiffs did not remove that act from the scope of his employment. Ermert, supra, 559 So.2d at 478. We find that Brown's conduct was connected closely enough to his employment to make it fair that the loss be borne by the enterprise. Id.
Accordingly, we find the trial court erred in drafting the jury interrogatories, with the result that the jury was clearly wrong in failing to find that Kmart was vicariously liable for Brown's actions.
We find that vicarious liability under La.C.C. art. 2320 is applicable in this case. Vicarious liability is solidary, making Kmart liable for payment of 100% of the damages to plaintiffs. Accordingly, we amend the judgment to delete the apportionment provision, which was applicable when the only fault determination was on Kmart's direct liability.

DAMAGES
Plaintiffs seek an increase in the damages awarded to Griffin and Chivleatto, as well as reversal of the jury's denial of damages to Kermit Chivleatto, Sr.
[T]he role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Each case is different, and the adequacy or inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration.
Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La.1993).
A reviewing court might well disagree with the amount of the award fixed by the jury, but it is not entitled to substitute its opinion for that of the trier of fact. Appellate review of awards for damages in the trial court is limited to determining whether the trial court abused its discretion. When a jury fixes an award, and that award is not disapproved by the trial judge, the action of the trial court is entitled to much respect, and should be upset only when it can be demonstrated that the jury abused its discretion.
Spillers v. Montgomery Ward & Co., Inc., 294 So.2d 803, 809 (La.1974).
Applying these principles in the case before us, we are unable to find that the jury committed an abuse of the great discretion granted it in fixing damage awards.
Griffin testified that Brown's "shooting" her startled and frightened her; she described his "shooting" of her daughter as "the most horrible experience I've ever experienced in my life, to see my child shot." However, she did not seek medical care or counseling, nor did she describe significant symptoms of emotional or physical distress. She said the effect of the incident is that she doesn't go to many stores and she is apprehensive about going anywhere near a sporting goods department.
Chivleatto testified she really thought she had been shot and started immediately screaming, "Get me out of here." Her chest hurt and she had difficulty breathing. She had to have the timing of her pacemaker reset. She sought psychiatric counseling. She admitted, however, that she was in counseling previously due not only to her son's death but also because of marital problems. She also stated that she stopped working as a practical nurse not because of the Kmart incident, but because the facility at which she was employed closed.
Kermit Chivleatto, Sr. testified he has been married to Beverlee Chivleatto for 21 years. He said the incident at Kmart "put a very big strain on them" and that it got to the point where he could do nothing right. He admitted that the couple had marital and sexual problems before *1234 this incident, but said "it was coming around," but this incident "just shut it off completely" again.
Reviewing these facts in connection with the principles enunciated above, we find no manifest error in jury's finding as to the extent of damage suffered by the plaintiffs individually, which is based partly on the jury's credibility determinations of the witnesses, nor do we find abuse of discretion in the amounts.

DECREE
For the foregoing reasons, we amend the judgment to provide that Kmart Corporation is cast for one hundred percent (100%) of the damages awarded. In all other respects the judgment is affirmed. The party are each cast with their own costs for this appeal.
AMENDED AND AFFIRMED.
NOTES
[1] Plaintiffs named Brown as a "John Doe" defendant because they were unsure of his name when suit was filed. Kmart filed a third-party demand against Brown. However, none of the parties was able to locate Brown and he was never served. The demands against him were severed in order to allow the claims against Kmart to proceed to trial.