JOY COSSICH LOBRANO, Judge.
hThe defendant, Lena Torres, Clerk of Court for the Parish of St. Bernard, has appealed the trial court judgment in favor of plaintiff, Lawrence A. Landry, awarding plaintiff court costs and civil penalties for the defendant’s delay in producing records requested by plaintiff pursuant to the Louisiana Public Records Act, La. R.S. 44:1 et seq.
The record reveals the following: On September 26, 2011, plaintiff delivered a letter to the defendant, which contained a request for public records. This request included two items: 1) the names of all employees employed by the St. Bernard Parish Clerk of Court, along with their gross annual salary, ending in 2010, and 2) a current list of all employees employed by *100 the St. Bernard Parish Clerk of Court as of August 81, 2011. On September 28, 2011, plaintiff made another written request for public records from the defendant. That request was for the August 2011 bank statements on all bank accounts for the St. Bernard Parish Clerk of Court.
On September 30, 2011, counsel for defendant delivered to plaintiff, via facsimile, a cover letter and the first two items requested by plaintiff, i.e. the names 1 2and salaries of defendant’s employees as of the end of 2010, and a current list of defendant’s employees as of August 31, 2011. In his letter, counsel noted that these two lists were easily created because there was no confidential information that needed to be redacted regarding plaintiffs’ first two requests.
On October 5, 2011, counsel for defendant delivered to plaintiff another letter via facsimile and regular mail. In that letter, counsel referred to the remaining item in plaintiff’s request for public records, i.e. the August 2011 bank statements. Counsel informed plaintiff that while financial data related to the public funds of the Clerk’s Office is a matter of public record, certain items that might be contained in bank statements, such as account numbers, PIN’s, and passwords, are protected from disclosure under the Public Records Act. Counsel identified the section of the Public Records Act that protected certain information from disclosure, and informed plaintiff that the Clerk’s Office was in the process of identifying financial data responsive to his request.
On November 10, 2011, plaintiff filed a petition against the defendant for writ of mandamus and injunctive relief and a motion for declaratory judgment for the defendant’s alleged violation of the Louisiana Public Records Act. In his petition, plaintiff noted that more than twenty-eight days had passed, excluding weekends and holidays, since his request for public records was submitted for the August 2011 bank statements. He also alleged that the defendant arbitrarily and capriciously withheld the requested public records, and asked for a writ a mandamus to be issued ordering the defendant to produce the requested records and for an injunction to be issued enjoining defendant from withholding the records. Plaintiff further alleged that he is entitled to an award of damages, attorney’s fees, costs and civil penalties pursuant to La. R.S. 44:35.
Is At trial, the defendant, Ms. Torres, testified that a bookkeeper in her office, Ms. Beryl Taylor, handled the bank records for the office. The only employees with access to the bank records in the office were Ms. Torres, Ms. Taylor, and Ms. Lena Nunez, the Chief Deputy Clerk of Court. Ms. Torres testified that in her more than twenty-four years as Clerk of Court, the plaintiffs request for records under the Public Records Act was the only such request she had ever received.
Ms. Nunez testified that when the request was made for the August 2011 bank statements, she and Ms. Taylor discussed the request. The plan was for Ms. Taylor to retrieve those statements, make copies of them, and turn the copies over to the attorney for the Clerk of Court’s office for redaction of information protected from disclosure by the Public Records Act. After the statements were redacted, the attorney for the Clerk of Court was to turn over the information to the plaintiff.
According to Ms. Nunez, after her discussion with Ms. Taylor regarding the plan for fulfilling plaintiffs public records’ request, Ms. Taylor’s husband became terminally ill and Ms. Taylor was out of the office for an extended period of time to care for her ailing husband. Ms. Nunez testified that she thought that Ms. Taylor had already forwarded the records to the *101 attorney for redaction before her unexpected absence from the office, and Ms. Taylor evidently thought that Ms. Nunez was going to forward the records during her absence. Ms. Nunez did not discover this error until plaintiff filed his mandamus suit. At that time, the records were forwarded to the attorney for the Clerk of Court. Between the time that the plaintiff made his request for public records and filed his writ of mandamus, he did not contact the Clerk of Court or her attorney to inquire as to the status of his request for the bank statements.
I/The plaintiff testified that he received a list of Clerk of Court employees and their salaries on September 30, 2011. He also stated that he received a letter from counsel for the Clerk of Court’s office, dated October 5, 2011, in which counsel acknowledged plaintiff’s request for the bank statements and informed him that the Clerk’s office was attempting to locate the records so that they could be sent to him. The letter did not deny that the records that plaintiff requested were public records. Plaintiff testified that following the filing of his mandamus suit on November 10, 2011, he received the requested bank statements from counsel for the Clerk of Court’s office on November 18, 2011. The cover letter accompanying the bank statements was dated November 16, 2011, and states that it was sent by both facsimile and regular mail, but plaintiff stated that he did not receive the records until November 18, 2011. At the beginning of the hearing, but not during his sworn testimony, plaintiff argued to the court his theory that Ms. Torres withheld the bank statements from him intentionally because he was running against her in the election for Clerk of Court, and she did not want him to use information gathered from the bank statements in his campaign.
Following a hearing, the trial court rendered judgment decreeing that the writ of mandamus requested by plaintiff is moot due to the fact that the documents have been satisfactorily produced. However, the trial court found that the production of the bank statements, 48 days after plaintiffs request (33 days when excluding weekends and legal holidays), was not timely. The trial court found the defendant’s explanation that miscommunication within the office caused the delay to be insufficient. The court reasoned that the bookkeeper was not needed to copy bank statements, which were kept in the office, given the fact that the attorney for the Clerk of Court’s office was involved in the matter, and could have [ ¡^accomplished this task without the bookkeeper’s involvement. Thus, the court awarded plaintiff court costs for having to file suit. The trial court did not award plaintiff attorney’s fees or actual damages, having found that he did not prove entitlement to either.
Although the trial court found that plaintiff did not prove actual damages, the court awarded him civil penalties based on the finding that the defendant was arbitrary and capricious in failing to timely provide the records and causing plaintiff to file a lawsuit in order to have the records produced. In finding the defendant’s actions to be arbitrary and capricious, the trial court noted that the office miscommu-nication that allegedly caused the delay was not mentioned in the November 16, 2011 letter sent to plaintiff by counsel for the Clerk of Court’s office, and that the only information redacted from the bank statements was account numbers, which the trial court found did not explain a delay of more than 30 days. The trial court stated that the documents could have easily been produced in 5 days as required by statute, but in no case should have taken more than 12 weekdays to produce. The court found that the failure of the *102 defendant to produce the statements in the 22 weekdays after the initial 12 weekdays following plaintiffs request warranted civil penalties for the arbitrary and capricious withholding of these records. Therefore, pursuant to La. R.S. 44:35, the trial court awarded plaintiff civil penalties totaling $1,100.00, which represented $50.00 per day for the 22 weekdays that the records were not produced after the initial period of 12 weekdays.
The defendant now appeals the trial court judgment, raising three assignments of error:
|fil) The trial court erred in finding a violation of the Public Records Act due to an inadvertent delay in the production of public records;
2) Even if a violation is found, the penalty provisions of the Public Records Act would not apply because the records sought were acknowledged in writing by the custodian as being public records subject to no disclosure provisions under the Act; and
3) The trial court erred in finding that the defendant’s inadvertent delay in the production of public records rose to the level of arbitrary and capricious conduct warranting an award of penalties under the Public Records Act.
La. R.S. 44:32 of the Public Records Act, entitled “Duty to permit examination; prevention of alteration; payment for overtime; copies provided; fees,” states as follows:
A. The custodian shall present any public record to any person of the age of majority who so requests. The custodian shall make no inquiry of any person who applies for a public record, except an inquiry as to the age and identification of the person and may require the person to sign a register and shall not review, examine or scrutinize any copy, photograph, or memoranda in the possession of any such person; and shall extend to the person all reasonable comfort and facility for the full exercise of the right granted by this Chapter; provided that nothing herein contained shall prevent the custodian from maintaining such vigilance as is required to prevent alteration of any record while it is being examined; and provided further, that examinations of records under the authority of this Section must be conducted during regular office or working hours, unless the custodian shall authorize examination of records in other than regular office or working hours. In this event the persons designated to represent the custodian during such examination shall be entitled to reasonable compensation to be paid to them by the public body having custody of such record, out of funds provided in advance by the person examining such record in other than regular office or working hours.
|7B. If any record contains material which is not a public record, the custodian may separate the nonpublic record and make the public record available for examination.
C. (l)(a) For all public records, except public records of state agencies, it shall be the duty of the custodian of such public records to provide copies to persons so requesting. The custodian may establish and collect reasonable fees for making copies of public records. Copies of records may be furnished without charge or at a reduced charge to indigent citizens of this state.
(b) For all public records in the custody of a clerk of court, the clerk may also establish reasonable uniform written procedures for the reproduction of any such public record. Additionally, in the parish of Orleans, the recorder of mort *103 gages, the register of conveyances, and the custodian of notarial records may each establish reasonable uniform procedures for the reproduction of public records.
(c) The use or placement of mechanical reproduction, microphotographic reproduction, or any other such imaging, reproduction, or photocopying equipment within the offices of the clerk of court by any person described in R.S. 44:31 is prohibited unless ordered by a court of competent jurisdiction.
(5) Any person, as provided for in R.S. 44:31, may request a copy or reproduction of any public record and it shall be the duty of the custodian to provide such copy or reproduction to the person so requesting.
(2) For all public records of state agencies, it shall be the duty of the custodian of such records to provide copies to persons so requesting. Fees for such copies shall be charged according to the uniform fee schedule adopted by the commissioner of administration, as provided by R.S. 39:241.
Copies shall be provided at fees according to the schedule, except for copies of public records the fees for the reproduction of which are otherwise fixed by law. Copies of records may be furnished without charge or at a reduced charge to indigent citizens of this state or the persons whose use of such copies, as determined by the custodian, will be limited to a public purpose, including but not limited to use in a hearing before any governmental regulatory commission.
|s(3) No fee shall be charged to any person to examine or review any public records, except as provided in this Section, and no fee shall be charged for examination or review to determine if a record is subject to disclosure, except as may be determined by a court of competent jurisdiction.
D. In any case in which a record is requested and a question is raised by the custodian of the record as to whether it is a public record, such custodian shall within three days, exclusive of Saturdays, Sundays, and legal public holidays, of the receipt of the request, in writing for such record, notify in writing the person making such request of his determination and the reasons therefor. Such written notification shall contain a reference to the basis under law which the custodian has determined exempts a record, or any part thereof, from inspection, copying, or reproduction.
The record in this case shows that counsel for the Clerk of Court provided the plaintiff with his requests for employee lists and salaries within a few days of those requests. Counsel sent plaintiff a letter within one week of his additional request for the bank statements, advising him that before those records could be produced, they needed to be reviewed so that information protected from public disclosure, such as account numbers, PINs (personal identification numbers) and passwords, could be redacted.
There was no evidence presented in this case indicating that the Clerk of Court ever raised a question as to whether the bank statements requested by plaintiff were public records. In fact, to the contrary, the letter of October 5, 2011 to plaintiff from counsel for the defendant specifically confirmed that financial data related to the public funds of the Clerk’s Office is a matter of public record, although subject to protection from disclosure of certain information, such as account numbers, PINs and passwords.
IsA review of the record shows that the plaintiff did not establish that the defendant violated the Louisiana Public Records *104 Act in the handling of plaintiffs request for public records. The three-day period set forth in La. R.S. 44:32(D) is inapplicable in this case because it only applies to cases in which the custodian of a record raises a question as to whether the requested record is a public record. Washington v. Reed, 95-1067 (La.App. 1 Cir. 2/23/96), 668 So.2d 1313, 1314, citing Foster v. Kemp, 94-1228 (La.App. 1 Cir. 6/23/95), 657 So.2d 681. Similarly, the penalty provisions of La. R.S. 44:35 are not applicable in cases where there is no question raised by the custodian that the records requested are public records. Washington v. Reed, supra. We find that the trial court was manifestly erroneous in holding that the defendant violated the Louisiana Public Records Act.
Even assuming arguendo that we were to find that a violation of the Public Records Act occurred in this case, which we do not, we would find manifest error in the trial court’s holding that the defendant acted arbitrarily and capriciously in her handling of plaintiffs request for public records. Ms. Nunez, the Chief Deputy Clerk of Court, testified as to a miscommu-nication in the Clerk of Court’s office that resulted in the delay of the production of plaintiffs request for the August 2011 bank statements. Although the trial court found that this explanation for the delay was not reasonable, plaintiff offered no evidence, testimonial or otherwise, to substantiate his theory that Ms. Torres intentionally withheld the bank statements from him for political purposes, or to otherwise show that the defendant acted arbitrarily and capriciously in the handling of his request for public records.[1] See Twardzik v. Orleans Parish School Board, 2003-1807 (La.App. 4 Cir. 5/26/04), 876 So.2d 855.
For the reasons stated above, we reverse the trial court judgment in favor of plaintiff and against the defendant.
REVERSED

. The trial court incorrectly stated in his judgment that the plaintiff testified that he was running for Clerk of Court against the defendant and believed that the delay in producing the bank statements was a manipulated move by the defendant to give her an advantage in the election. A reading of the trial transcript reveals that the plaintiff did not include his theory as to Ms. Torres's alleged motivations in his sworn testimony; rather, he stated his theory to the trial court in unsworn remarks made at the opening of the hearing. Mr. Landry has represented himself in proper person throughout these proceedings.