# United States Court of Appeals for the Fifth Circuit

No. 24-30207

United States Court of Appeals
Fifth Circuit

**FILED**

April 14, 2025

Lyle W. Cayce
Clerk

Jorge Gomez,

*Plaintiff—Appellant*,

*versus*

John Galman; City of New Orleans,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:19-CV-11803

Before Graves, Engelhardt, and Oldham, *Circuit Judges*.

Per Curiam:[*]

On its second trip to this court, this case presents a question of Louisiana law we have already answered: whether duty is a question of law for the court to decide. We previously explained that it is. Because the district court submitted that question of law to the jury, confusing the factfinders in the process, we must REVERSE and REMAND for a new trial. As for issues related to recovery under the Louisiana Public Records Act (LPRA),

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

we see no basis to disturb the district court's findings as to actual damages and AFFIRM on that basis. But because the district court failed to apply the relevant test as to attorney's fees and costs, we VACATE this portion of its LPRA ruling and REMAND for further proceedings.

I

Two off-duty New Orleans Police Department officers, John Galman and Spencer Sutton, initiated a brutal and protracted fight with bar patron and appellant Jorge Gomez on the evening of July 24, 2018. The brawl ended with Gomez in the emergency room and both officers criminally charged. One year later, Gomez sought records under the LPRA and filed this lawsuit against the officers and the City of New Orleans, asserting—in relevant part—42 U.S.C. § 1983 claims against the officers; negligent hiring, retention, and supervision claims against the City; and LPRA claims against the City for the failure to produce records in accordance with statutory procedures.

Following a motion to dismiss, Gomez amended his complaint. The City filed another motion to dismiss, which the district court granted. Gomez appealed, and we reversed in part. *See Gomez v. Galman* (*Gomez I*), 18 F.4th 769 (5th Cir. 2021). We reversed dismissal of the § 1983 claims because Gomez's allegations gave rise to the plausible inference that Galman and Sutton acted under color of law. *Id.* at 776–77. And we reversed dismissal of the state law negligent hiring, retention, and supervision claims against the City. *Id.* at 780–81. We explained that "[w]hen an employer hires an employee who in the performance of his duties will have a unique opportunity to commit a tort against a third party, he has a duty to exercise reasonable care in the selection of that employee." *Id.* at 780 (quoting *Kelley v. Dyson*, 10 So. 3d 283, 287 (La. App. 5 Cir. 2009)). Whether an employer has that duty is a "question of law." *Id.* (citing *Griffin v. Kmart Corp.*, 776 So. 2d 1226, 1231

2

(La. App. 5 Cir. 2000)). The officers' alleged use of authority and certain maneuvers suggested they had unique opportunities to commit the tort by virtue of their employment as police officers. *Id.* at 781.

The § 1983 claims against Galman and negligence claims against the City proceeded to trial.[1] Despite our instruction that duty is a question of law, the district court submitted that question to the jury, and the jury returned a complete defense verdict. The jury found that Galman did not act under color of law during the July 2018 incident, which defeated the § 1983 claims against him. The jury also found that Galman did not benefit from a "unique opportunity" so "as to give rise to a duty on the part of defendant the City of New Orleans," negating Gomez's state law negligence claims against the City.

After the jury returned its verdict, Gomez and the City tried the LPRA claims to the court. In a detailed opinion that parses each of Gomez's successive LPRA requests, the district court concluded that the City did not act arbitrarily or capriciously when it waited two months (including three days *after* Gomez filed suit and two days after the statute of limitations expired) to produce any records pursuant to his first request because, among other reasons, the request was "voluminous." Additionally, the court held that Gomez failed to prove any damages from the delay. Though the court awarded civil penalties for the City's failure to respond to other requests, it declined to award attorney's fees and costs, reasoning that Gomez filed suit before the City could complete his requests.

---

[1] *Gomez I* affirmed dismissal of Gomez's *Monell*, vicarious liability, and intentional infliction of emotional distress claims. 18 F.4th at 783. It sustained Gomez's § 1983 claims against the two officers and his negligent hiring, retention, and supervision claims against the City. *Id.* Before trial, however, Gomez dismissed all claims against Sutton, who unexpectedly passed away. The surviving claims proceeded as to Galman and the City.

No. 24-30207

Gomez appealed, contending the district court erred when it tasked the jury with deciding a question of law and erred in denying Gomez actual damages and attorney's fees under the LPRA. We address each in turn.

## II

In its attempt to faithfully apply *Gomez I* and address the objections of both parties, the district court misinterpreted our opinion as transforming the duty inquiry into a mixed question of law and fact. It then submitted that novel construction to the jury. The district court's melding of law and fact not only conflicts with Louisiana law and our decision in *Gomez I*, it also confused the jury. We therefore must reverse.

## A

"Jury instructions are reviewed for abuse of discretion," but "when a challenged jury instruction hinges on a question of law, review is de novo." *Westport Ins. Corp. v. Penn. Nat'l Mut. Cas. Ins. Co.*, 117 F.4th 653, 665 (5th Cir. 2024) (citations omitted). "Verdict forms are considered part of the jury instruction," reviewed in light of the instruction as a whole. *Matter of 3 Star Props., L.L.C.*, 6 F.4th 595, 610 (5th Cir. 2021) (citations omitted). We consider "whether the district court's charge is a correct statement of the law and whether it clearly instructs jurors as to the principles of law applicable to the factual issues confronting them." *Westport Ins. Corp.*, 117 F.4th at 665. But even an "erroneous jury instruction" will not warrant reversal unless it "affected the outcome of the case." *Id.* at 666 (citation omitted). The party challenging jury instructions "must demonstrate that the charge as a whole creates substantial and ineradicable doubt whether the jury has been properly guided in its deliberations." *RSBCO v. United States*, 104 F.4th 551, 555 (5th Cir. 2024) (citation omitted), *cert. denied*, No. 24-561, 2025 WL 76488 (U.S. Jan. 13, 2025).

4

No. 24-30207

B

As we explained in *Gomez I*, negligent hiring, retention, and supervision claims are "governed by the same duty-risk analysis used in Louisiana for negligence claims." 18 F.4th at 780 (quoting *Kelley*, 10 So. 3d at 287). The elements of a Louisiana negligence claim are: "(1) duty; (2) breach of duty; (3) cause-in-fact; (4) scope of liability or scope of protection; and (5) damages." *Id.*; *see also Evans v. Abubaker, Inc.*, 384 So.3d 853, 858 n.4 (La. 2024). "[T]he existence of a duty is . . . [a] question of law." *Gomez I*, 18 F.4th at 780; *see also Evans*, 384 So.3d at 858 ("The threshold issue in any negligence action is whether the defendant owed the plaintiff a duty, and whether a duty is owed is a question of law."). In the context of negligent hiring, retention, and supervision claims, "a duty to exercise reasonable care in the selection of [an] employee" arises when "an employee . . . in the performance of his duties will have a unique opportunity to commit a tort against a third party." *Gomez I*, 18 F.4th at 780 (quoting *Kelley*, 10 So. 3d at 287). "The primary focus is whether the employment gave the tortious/criminal employees unique opportunities to commit their wrongdoing." *Id.* (cleaned up). The district court's jury instructions and verdict form do not reflect this legal inquiry.

The district court issued the following instruction as to the duty element of Gomez's negligence claim:

> To recover on a claim for negligent training, supervision, or retention, a plaintiff must prove by a preponderance of the evidence that the employee (here, John Galman), at the time of the July 2018 incident, while not necessarily within the 'scope of employment,' was engaged in some way in furthering the employer's business . . . or the employee had a unique opportunity to commit a tort against a third party. . . . *As a matter*

5

No. 24-30207

> *of law, the City had a duty to exercise reasonable care in the training, supervision, and retention of police officers because police officers in the performance of their duties have a unique opportunity to cause harm to third parties.* To support a finding of negligence against the City of New Orleans as a defendant, plaintiff Jorge Gomez must prove that John Galman *benefited from a unique opportunity provided by his employment* to cause harm to plaintiff Jorge Gomez.  In addition, the plaintiff must prove the other four elements . . . .[2]

The duty question of the "State-Law Negligence Claims Against the City of New Orleans" was distilled into Question 5(a) of the jury verdict form. It read:

> Do you find by a preponderance of the evidence that *John Galman benefited from a unique opportunity* provided by his employment as a police officer to cause harm to plaintiff Jorge Gomez, *as to give rise to a duty* on the part of defendant the City of New Orleans to exercise reasonable care in either the training, or the supervision, or the retention of John Galman in regard to the July 2018 incident?[3]

Both parties objected to the instruction and question in the jury verdict form. Gomez contended that our decision in *Gomez I* made clear that duty is a question of law for the court to decide. The City objected that the form "fail[ed] to pose an essential factual question—whether the City had a duty to Gomez." The district court overruled both, explaining that, in its view, the City's duty to exercise reasonable care with respect to the July 2018

_____

[2] Final Jury Instructions at 14–16 (emphasis added).

[3] Jury Verdict Form at 3 (emphasis added).

6

incident would arise only if the jury found as a matter of fact that the officers benefited from a unique opportunity to commit this specific tort.

1

At the outset, Louisiana case law reiterates that duty is generally a question reserved for the court to decide. "When an employer hires an employee who in the performance of his duties will have a unique opportunity to commit a tort against a third party, he has a duty to exercise reasonable care in the selection of that employee." *Kelley*, 10 So. 3d at 287. The existence of a duty "is a question of law." *Smith v. Orkin Exterminating Co.*, 540 So. 2d 363, 366 (La. App. 1 Cir. 1989); *see also Griffin*, 776 So. 2d at 1231 ("The first element is usually a judge question . . . ." (citation omitted)).

In many cases, it is "clear" that the employer has a duty to exercise care in hiring, training, retaining, and supervising an employee because the "unique opportunity" provided by the job to commit the tort at issue is obvious. *Griffin*, 776 So. 2d at 1231. For example, a unique opportunity exists when an employee has access to a firearm, air gun, customers' homes, or hotel guest rooms. *Kelley*, 10 So. 3d at 287–88 (collecting cases). A unique opportunity also clearly exists when an employee will be in "a position of authority" over others and that authority is abused. *See Harrington v. La. State Bd. of Elementary & Secondary Educ.*, 714 So. 2d 845, 851 (La. App. 4 Cir. 1998) (community college owed a duty of care in hiring a program director who abused authority to assault a student). Consistent with these cases, Louisiana cases suggest that officers, by virtue of their positions of authority and training, have unique opportunities to commit a tort— irrespective of whether that tort was committed while off duty. *See Corkern v. Smith*, 960 So. 2d 1152, 1155 (La. App. 3 Cir. 2007) ("A duty is imposed upon the State to exercise reasonable care in the hiring, training, and retaining of its officers, who in the performance of their duties, are likely to

subject third parties to serious risk of harm."); *Roberts v. Benoit*, 605 So. 2d 1032, 1037, 1054 (La. 1991) (acknowledging a duty of care despite off-duty behavior), *on reh'g* (May 28, 1992).[4]

In sum, the City's duty to exercise reasonableness in hiring, retaining, and supervising officers who by virtue of their employment will have unique opportunities to commit torts is clear in this case. Portions of the district court's jury charge explicitly reflect this correct conclusion. The charge explained that "[a]s a matter of law, the City had a duty to exercise reasonable care in the training, supervision, and retention of police officers *because police officers in the performance of their duties have a unique opportunity to cause harm to third parties*." The instruction as to the duty element should have ended there. And having resolved *as a matter of law* that the officers had a unique opportunity to cause harm, there was nothing left for the jury to decide on this element. The court therefore erred in submitting to the jury the question whether a unique opportunity gave rise to a duty.[5]

---

[4] As *Roberts* makes clear, the existence of a duty does not necessarily mean that the risk at issue is encompassed within the scope of that duty. *See Roberts*, 605 So. 2d at 1054 (explaining scope of the protection of duty element and explaining that while the court did "not quibble with the opinion on original hearing," it may have been overly "generous in its characterization of the duty"). The scope of the duty, however, is a separate inquiry. *See infra* § II(B)(2).

[5] We do not foreclose the possibility that predicate disputed facts regarding obscure roles and responsibilities may require resolution by a jury before the court decides whether, as a matter of law, a duty exists. *See Brown v. City of Alexandria*, 2019 WL 1119578, at *5 (W.D. La. Mar. 8, 2019) ("[T]he evidence relevant to the determination of whether a 'unique opportunity' exists is evidence related to the employee's job, not evidence of the employee's personal characteristics or propensity for violence."). Given the case law and clarity around officers' unique opportunities to commit a tort like the one at issue here, this is not that case.

2

Even assuming, purely for the sake of argument, that the "unique opportunity" inquiry required some factual development in this case, the jury instructions and form would still require reversal.[6]

The jury instructions and verdict form provided conflicting guidance on the duty question. The instructions established that officers have a unique opportunity to commit torts against third parties as a matter of law. But the verdict form asked whether Galman, an officer, had a unique opportunity to commit a tort against Gomez, a third party, so as to give rise to a duty as a matter of fact. Rather than stopping at what the district court believed to be a factual matter—i.e., whether Galman had a unique opportunity to commit a tort against Gomez—the verdict form invited the jury to weigh in on the existence of a duty, which is without question a matter of law for the court to decide.

Moreover, the court's jury instructions appeared to collapse the duty and scope of protection of duty inquiries, which evidently confused the jury. The court instructed that Gomez "must prove by a preponderance of the evidence that [Galman], at the time of the July 2018 incident, . . . was engaged in some way in furthering the [City's] business . . . *or* the employee had a unique opportunity to commit a tort against a third party." Question 5(a) of the verdict form regarding duty referenced only the unique opportunity inquiry. Picking up on this discrepancy, the jurors submitted a question to the court about "Question Number 5(a)," noting that the "[i]nstructions and verdict sheet list different criteria for determination of preponderance. Instructions . . . include . . . 'furthering the employer[']s business,' but the

_____

[6] As counsel for the City conceded at oral argument, the jury instructions were "a little wonky."

verdict form does not." Accordingly, the jurors asked whether furthering the employer's business "should . . . be considered" with respect to answering the duty question. The court instructed that jurors should consider this criterion in answering Question 5(a).

Louisiana case law suggests that the consideration whether the employee was furthering the employer's interests is most relevant not to duty but the "scope of protection of duty"—a separate element entirely.[7] The scope of protection of duty asks "whether the particular risk falls within the scope of the duty." *Roberts*, 605 So. 2d at 1044. Under the "scope of protection of duty," "the risk that a deputy while off duty" will engage in a bar fight "and cause injury to plaintiff" may fall "outside the ambit of protection contemplated by the imposition of that duty." *Id.*; *Jackson v. Ferrand*, 658 So. 2d 691, 702 (La. App. 4 Cir. 1994) ("The hotel's duty . . . does not encompass the risk that . . . a hotel employee after working hours . . . would sexually assault the guest while off the premises."); *cf. Kogos v. Payton*, 522 So. 2d 1198, 1199–200 (La. App. 4 Cir. 1988) (concluding off-duty police officer's altercation at a bar established "little connection between the activities of defendant and his employment as a police officer with the New Orleans Police Department."). Whether the officer was furthering the City's business is a question distinct from whether the City's duty of reasonable care exists in the first place.

In sum, the district court erred in submitting to factfinders the question whether a duty exists as a matter of law. But even assuming that the

---

[7] Somewhat surprisingly, the City concedes that the district court's instructions collapsed the two elements. The City maintains that "[t]he district court correctly stated that to support a finding of negligence against the City, Gomez must prove Galman benefitted from a unique opportunity provided by his employment. Essentially that the jury must find scope of [protection of duty] existed." Because duty and scope of protection are separate elements, it is not clear why conflating the inquiries was "correct[]."

question of duty in this case were contingent on disputed facts, the instructions and verdict form exceeded any limited factual inquiry and conflated elements of Gomez's claim. The record evidence indicates that this legal morass confused jurors in the process.

## C

Even so, the City contends that any misstatements of law or confusion generated by the instructions and verdict form are insufficient to warrant reversal. Because the jury found that Galman was not acting under color of law with respect to the § 1983 claims, the City posits that Galman was not at fault and could not have acted in furtherance of the City's business. And without fault and furtherance, Gomez cannot prevail on a negligence theory against the City irrespective of any errors in the charge or verdict form on those claims. Though persuasive at first blush, the City's arguments do not neatly apply to this case.

It is indisputable that "an employer can only be liable . . . if the employee is at fault." *Martin v. Thomas*, 346 So. 3d 238, 247–48 (La. 2022). In this case, the officers admitted fault, pleading guilty to simple battery as a result of the July 2018 incident. *See, e.g.*, *Harrington*, 714 So. 2d at 849 (reversing jury's finding that the state school board was not negligent in hiring a program director who had a criminal record and admitted at trial that "he was found guilty" of the rape giving rise to the negligent hiring and vicarious liability claims).[8]

_____

[8] The City relies on a single appellate case to support its contention that Gomez's "ability to recover on a claim or negligent training and supervision is contingent upon a successful claim against the officer for false arrest and use of excessive force." *Morgan v. Richard*, 305 So. 3d 932, 936 (La. App. 3 Cir. 2020). But *Morgan* does not necessarily support so broad a proposition. The *Morgan* negligence claim arose in the context of alleged excessive force where the plaintiff had "not submitted any evidence that excessive force was used or that he suffered any injury." *Id.* Because the officer clearly committed no fault,

No. 24-30207

Further, it is not clear that a jury's color-of-law finding is dispositive of the question whether he was furthering his employer's business.[9] But we need not decide this question on which there appears to be relatively little Louisiana law. Even assuming, without deciding, that the color-of-law analysis is determinative, neither the jury instructions nor the verdict form were crafted in this contingent fashion. To the contrary, the verdict form expressly directed jurors to "proceed to question 5(a)" if it found that Galman was *not* acting under color of law. Because the § 1983 and negligence claims were presented to the jury as distinct—not contingent—questions, it is not clear to what degree the erroneous negligence instructions impacted the jury's analysis as to the § 1983 claims. The contradictory jury charge and verdict form leave us with substantial doubt about whether the jury was properly guided in its deliberations as a whole. *RSBCO*, 104 F.4th at 555. We therefore REVERSE.

## III

We turn next to Gomez's LPRA claims.

---

his employer could not be liable for the alleged failure to train or supervise him. This stands in stark contrast to this case, where both officers pleaded guilty to simple battery from their actions towards Gomez.

[9] Some scholars suggest that the two inquiries are not twins. *See Basic Principles of Section 1983 Litigation*, Police Misconduct: Law and Litigation § 1:2 (Color of Law) ("The element of acting under color of state law is distinct from the issue of whether an officer acted within the 'scope of employment.' . . . A determination that an officer was acting outside the scope of his or her employment is related to but not dispositive of the color of law question."); *cf. Gomez I*, 18 F.4th at 781 (explaining that, for purposes of vicarious liability, the color-of-law and scope-of-employment inquiries are distinct but also suggesting the color-of-law inquiry is a higher burden).

No. 24-30207

A

The LPRA sets out procedures custodians must follow when they receive requests for public records. Under the LPRA, the custodian must timely respond to the requestor by:

> (1) immediately presenting a public record that is immediately available, or, if not immediately available, certifying such to the requestor and fixing a time within three [business] days[10] for the exercise of the right; (2) notifying the requestor within three days of each request of any question raised by the custodian as to whether a record is a public record; or (3) within five days of each request, providing a written estimate of the time reasonably necessary for collection, segregation, redaction, examination, or review of the request.

*Par. of Ascension v. Wesley*, 291 So. 3d 730, 735 (La. App. 1 Cir. 2019) (citing LA. STAT. ANN. §§ 44:33(B)(1), 32(D), 35(A)). If five business days pass without a custodian's determination in writing or an estimate of time reasonably necessary to complete the request, the requestor "may institute proceedings for the issuance of a writ of mandamus, injunctive or declaratory

---

[10] As the district court explained, the response time has changed:

> At the time of the request, La. R.S. 44:32(D) provided a three-day response period, excluding Saturdays, Sundays, and legal public holidays, in instances where a question is raised as to the producibility of a public record. This response period was expanded to five days in 2022. *See* 2022 La. Acts No. 770, § 1. While Gomez's complaint references the five-day period, the three-day period is applicable here because that was the delay period in place at the time the requests were made.

13

relief, together with attorney fees, costs and damages." §§ 44:35(A), 44:32(D).

"The remedy for wrongful failure to produce public records in accordance with the Louisiana Public Records Act includes a writ of mandamus ordering the production of the documents," and under certain statutory conditions, "damages, costs, and attorney's fees." *Williams v. Kreider*, 996 F.2d 306 (5th Cir. 1993) (citation omitted). Two circumstances trigger actual damages: "the arbitrary or capricious withholding of the record, and the arbitrary or unreasonable failure to [timely] provide the exemption notice." *Roper v. City of Baton Rouge*, 244 So. 3d 450, 460 (La. App. 1 Cir. 2018), *writ denied*, 252 So. 3d 926 (La. 2018). Civil penalties are available "only when a custodian unreasonably or arbitrarily fails to provide the exemption notice." *Id.* Attorney's fees and costs, on the other hand, "*shall* be awarded" to a requestor who completely prevails in his LPRA suit. La. Stat. Ann. § 44:35(D)(1) (emphasis added).

B

The district court did not err in declining to award actual damages. To secure actual damages, Gomez must demonstrate that the City arbitrarily withheld records or failed to timely provide the exemption notice. *Roper*, 244 So. 3d at 460. In the LPRA context, the terms "arbitrary and capricious" encompass "willful and unreasoning action, absent consideration and in disregard of the facts and circumstances of the case." *Id.* at 462 (citing *Toups v. City of Shreveport*, 60 So. 3d 1215, 1217 (La. 2011)). If "there is room for two opinions, an action is not arbitrary or capricious when exercised honestly and upon due consideration, even though it may be believed an erroneous conclusion has been reached." *Id.*; *see also Fortenberry v. Evans*, 387 So. 3d 921, 936 (La. App. 2 Cir. 2024). A district court's "factual finding" that

conduct is not "arbitrary or capricious . . . may not be disturbed on appeal unless manifestly erroneous." *Roper*, 244 So. 3d at 462 (citation omitted).

The district court's opinion demonstrates that Gomez presented his first request to the City on May 29, 2019 (at the earliest), but the City did not provide any response until June 12, 2019, when it advised Gomez "that it would need 'some time' to process the request due to 'high volume.'" The City did not produce any records until July 26, 2019, two months after the first request, and it was not until this production that the City informed Gomez that some records were subject to an exemption. So, the City did not comply with the three-day time period to state a basis for an exemption.[11] But the City did provide an explanation for the delay—a high volume of requests. And while the City apparently did not cite the volume of Gomez's requests as a basis for the delay, the district court perceived Gomez's initial seven categories of requests, many of which included requests for "any and all" related documents, to be "voluminous." It is debatable whether this request was actually voluminous. But a debatable finding is insufficient to overturn the district court's conclusion that the City's conduct was not arbitrary and capricious. *See Roper*, 244 So. 3d at 462.

That the City produced the documents two days after the statute of limitations expired does not necessitate a different result. Because Gomez provided "no evidence . . . to prove that the delay was due to anything other than the time required . . . to complete the requests," *Aswell v. Div. of Admin., State*, 196 So. 3d 90, 96 (La. App. 1 Cir. 2016), or "to substantiate his theory that [the custodian] intentionally withheld" documents for some other

---

[11] While the district court did not award Gomez actual damages, it did impose civil penalties for this delay.

purpose, *Landry v. Torres*, 101 So. 3d 98, 104 (La. App. 4 Cir. 2012), the district court's determination stands.

Moreover, while the City acted "unreasonably," in failing to respond to Gomez's requests for interview reports and footage, the district court nonetheless correctly declined to award actual damages because Gomez failed to prove any. Gomez's allegations of actual damages are entirely speculative. Contentions that he could have avoided any initial dismissal of his complaint and subsequent appeal if he were armed with all the evidence he requested through the LPRA process are belied by this court's opinion affirming dismissal of several claims. Moreover, as the district court pointed out, records he requested (the 911 call and body-worn footage) were later produced in discovery and presented to a jury who were not persuaded by the evidence. Gomez offers little evidence to suggest that the purportedly withheld evidence would have avoided the costs of repleading or appeal. Accordingly, we AFFIRM the district court's denial of actual damages.

## C

Gomez's claim for attorney's fees and costs is governed by a different analysis. Under the LPRA, a person who "prevails . . . shall be awarded reasonable attorney fees and other costs of litigation." LA. STAT. ANN. § 44:35(D)(1). But if he only "prevails in part, the court may in its discretion award him reasonable attorney fees or an appropriate portion thereof." *Id.* Whether a person "completely prevail[s]" turns on whether he achieves "the object of [his] suit." *Ferguson v. Stephens*, 623 So. 2d 711, 717 (La. App. 4 Cir. 1993).

"In a mandamus action, the object of the action is access to public records, and the object is achieved if access is granted after beginning litigation." *Washington v. Cannizzaro*, 317 So. 3d 826, 841 (La. App. 4 Cir. 2021) (citation omitted); *see Mercato Elisio, L.L.C. v. City of New Orleans*, 259

So. 3d 1235, 1244 (La. App. 4 Cir. 2018) (litigant completely prevailed when he "received documents after beginning litigation on the Writ of Mandamus."). The custodian's state of mind in delaying the records is irrelevant. *Mercato Elisio, L.L.C.*, 259 So. 3d at 1243–44. Were it otherwise, "custodians would be allowed to deny access to public records until suit has been filed and then, after a member of the public has incurred the costs of instituting proceedings, . . . unilaterally preclude[] the member of the public any possibility of 'prevailing' on his suit." *Heath v. City of Alexandria*, 11 So. 3d 569, 572 (La. App. 3 Cir. 2009). For this reason, when a custodian waited "over two months" to produce records—including after the requestor filed suit—the requestor completely prevailed. *Id.*; *see also Johnson v. City of Pineville*, 9 So. 3d 313, 317 (La. App. 3 Cir. 2009) (requestor completely prevailed when "over two months had passed" since the request and the custodian "handed [him] the requested public records on the morning of trial").

The district court did not grapple with this line of cases. Instead, even though the City did not begin to produce records until three days *after* Gomez filed suit, the district court held that Gomez was not entitled to attorney's fees for certain requests because he filed suit before the City's twice-extended deadline expired. The relevant question for fees is whether he completely prevailed in that action. Because the district court did not undertake this analysis or consider the impact of the City's post-suit production on the question, we VACATE and REMAND for the district court to consider these issues in the first instance.

## IV

For the foregoing reasons, we REVERSE as to the jury instructions and verdict form and REMAND for a new trial, VACATE as to attorney's

No. 24-30207

fees and costs under the LPRA and REMAND for further proceedings consistent with this opinion.