# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 09-320


CLAUDIA ANNETTE SENAC

VERSUS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, ET AL.


************


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2006-6207
HONORABLE JOHN D. TRAHAN, DISTRICT JUDGE


************


## MICHAEL G. SULLIVAN
## JUDGE


************


Court composed of Michael G. Sullivan, Elizabeth A. Pickett, and Billy Howard Ezell, Judges.


**AFFIRMED.**


Matthew D. McConnell
Elmore & McConnell
700 St. John Street, Suite 401
Lafayette, Louisiana 70501
(337) 233-2417
Counsel for Plaintiff/Appellant:
    Claudia Annette Senac

Kenny L. Oliver
David O. Way
Oliver & Way
Post Office Box 80655
Lafayette, Louisiana 70598-0655
(337) 235-2112
Counsel for Defendants/Appellees:
    Roclan Service & Supply, LLC
    Roclan Services, Inc.

**Gretchen Heider Mayard**
**Katherine Paine Martin**
**Attorneys at Law**
**Post Office Box 81338**
**Lafayette, Louisiana  70598-1338**
**(337) 291-2440**
**Counsel for Defendants/Appellees:**
**State Farm Mutual Automobile Insurance Company**
**Philip R. Smith**

**SULLIVAN, Judge.**

Plaintiff appeals the dismissal of her tort claim against defendant-driver's employer. We affirm.

***Facts***

On December 12, 2005, Philip Smith was involved in an automobile accident with vehicles driven by Gloria Conques and Claudia Senac. Ms. Senac sued Ms. Conques, Mr. Smith, and Mr. Smith's employer, Roclan Services (Roclan), to recover damages she suffered as a result of the accident. Ms. Senac settled her claims against Ms. Conques, her insurer, Mr. Smith, and his insurer and dismissed them from this litigation. Thereafter, Roclan filed a motion for summary judgment, asserting that it is not vicariously liable for Mr. Smith's actions because he was not in the course and scope of his employment when the accident occurred.

Roclan relied on the deposition testimony of Mr. Smith and his supervisor, Kim Cormier, as support for its motion for summary judgment; that testimony establishes the following. Mr. Smith was employed by Roclan as a rigger on an offshore construction crew and had finished a hitch offshore shortly before the accident occurred. He and the crew with which he worked that hitch had been transported by Roclan from offshore to its office in Duson. Mr. Smith and other members of the crew had parked their vehicles at Roclan's office while they were offshore. Mr. Smith testified that before he left Roclan's office, Mr. Cormier asked him for a ride to his home in Sunset and that he agreed to drive him. After leaving Roclan's office in Duson, Mr. Smith drove to a Burger King in Lafayette. The accident occurred just after he drove out of the Burger King parking lot. After the police completed their investigation of the accident, Mr. Smith drove Mr. Cormier home.

1

Mr. Smith also testified that he and the rest of the crew had completed their hitch when the accident occurred and that he was not on an errand for anyone. Additionally, he testified that he always worked on a different crew; he never used his truck for errands for Roclan; he did not receive reimbursement from Roclan for mileage or money for fuel, insurance, or maintenance on his vehicle; and he was not provided a cell phone, beeper, or pager by Roclan.

Mr. Cormier testified that he was an offshore supervisor for Roclan at the time of the accident and that he was authorized to "run off" employees from a job he was supervising, but he was not authorized to fire such employees. With regard to the day of the accident, he testified that after he returned to Roclan's office he was unable to contact his wife to have her pick him up, that Mr. Smith offered to drive him home, and that he accepted the offer. He later admitted, however, that he was not certain if he asked Mr. Smith for a ride or if Mr. Smith offered him a ride.

Mr. Cormier was asked whether he and Mr. Smith were being compensated on their way home. He testified that Roclan crew members are guaranteed twelve hours pay for each day of their hitch, which includes all days they are on the water. He explained that they are paid twelve hours pay for each day they are on the water, whether they actually work or not, and that they are also paid twelve hours the day after the last day they work, *if* they reach the dock on their return trip inland after midnight. They are not paid twelve hours pay for the day after the last day of their hitch, however, if they reach the dock before midnight. Mr. Cormier also testified that the crew had completed their hitch and their work was over; that at the time of the accident, he was not doing anything which benefitted Roclan and was not in a supervisory capacity over Mr. Smith; and that Mr. Smith's giving him a ride home

2

had nothing to do with his work performance. Mr. Cormier explained, as did Mr. Smith, that he did not receive reimbursement from Roclan for mileage or meals, and that Roclan did not provide him with a cell phone, beeper, or pager.

After a hearing, the trial court granted summary judgment in favor of Roclan. Ms. Senac appeals.

### *Motion for Summary Judgment*

Appellate courts review motions for summary judgments de novo to determine whether any genuine issue of material fact exists and whether the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B). A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B).

The initial burden of proof is on the mover to show that no genuine issue of material fact exists. La.Code Civ.P. art. 966(C)(2). However, if the mover will not bear the burden of proof at trial on the issue that is presented by the motion for summary judgment, he is not required "to negate all essential elements" of his opponent's claim but need only point out that there is "an absence of factual support for one or more elements essential" to his opponent's action. *Id.* If the opponent "fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact." *Id.*

### *Discussion*

An employer has vicarious liability for his employee's tortious conduct if that conduct occurred "in the exercise of the functions in which [he is] employed."

3

La.Civ.Code art. 2320. In applying Article 2320, courts consider whether the employee's tortious conduct was "within the course and scope" of his employment duties. *Orgeron v. McDonald*, 93-1353, p. 4 (La. 7/5/94), 639 So.2d 224, 226. Contrary to workmen's compensation cases, courts strictly construe this phrase in cases involving damage claims for personal injuries. *White v. Canonge*, 01-1227 (La.App. 5 Cir. 3/26/02), 811 So.2d 1286. *See also, Seay v. Wilson*, 569 So.2d 227 (La.App. 1 Cir. 1990), *writ denied sub nom. Johnson v. Newman*, 572 So2.d 70 (La.1991); *Arledge v. Royal-Globe Ins. Co.*, 401 So.2d 615 (La.App. 3 Cir. 1981); *Lowe v. Gentilly Dodge, Inc.*, 342 So.2d 1231 (La.App. 4 Cir. 1977).

As a general rule, if an employee's conduct is "of the kind that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer," it is considered to be within the course and scope of his employment. *Orgeron*, 639 So.2d at 226-27 (citing W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 70 (5th ed. 1985)). Employees traveling to and from work are usually not in the course and scope of employment:

> Because an employee usually does not begin work until he reaches his employer's premises, his going to and coming from work is generally considered outside the course of his employment unless he has a duty to perform en route. Moreover, an employee's place of residence is a personal decision not directly controlled by the employer, and treating commuting time as part of the determination of course and scope of employment would remove manageable boundaries from the determination.

*Id.* at 227.

In *Orgeron*, the supreme court reiterated several factors it had previously identified in *Reed v. House of Decor, Inc.*, 468 So.2d 1159 (La.1985), which must be considered when determining whether a tort was committed within the course and

scope of an employee's employment. These factors include: 1) the payment of wages; 2) the employer's power of control; 3) the employee's duty to perform the particular act; 4) the time, place, and purpose of the act in relation to service; 5) the relationship between the employee's act and the employer's business; 6) the benefits received by the employer from the act; 7) the motivation of the employee for performing the act; and 8) the reasonable expectation of the employer that the employee would perform the act.

Ms. Senac urges that consideration of these factors mandates a determination that Mr. Smith was in the course and scope of his employment with Roclan at the time she was injured and complains that the trial court wrongly performed this assessment with regard to Mr. Cormier, rather than Mr. Smith as it should have. We have assessed the *Reed/Orgeron* factors in light of the general rule that for an employee's conduct to be within the course and scope of his employment it must be "of the kind that he is employed to perform, occur[] substantially within the authorized limits of time and space, and [be] activated at least in part by a purpose to serve the employer" and find no error with the trial court's conclusion. *Orgeron*, 639 So.2d at 226-27.

Ms. Senac strongly contends that because Mr. Smith and Mr. Cormier were being paid twelve hours "guaranteed pay" at the time of the accident, this factor weighs in her favor. Mr. Smith and Mr. Cormier were being paid wages by Roclan at the time of the accident; however, their job duties were complete at that time and the wages were not paid for work being performed at that time but because they were "on the water" after midnight. While both men testified that they might be called to work at any time, they also testified that their work was complete and that neither of them was performing a service for Roclan at the time of the accident.

5

Another panel of this court recently addressed the "wage" factor in *Hargrave v. Delaughter*, 08-1168, p. 7 (La.App. 3 Cir. 3/4/09), 10 So.3d 245, 250, with respect to an employee who was paid a salary and concluded that "'wages' as contemplated by the supreme court [in *Reed*, 468 So.2d 1159] refers to piecemeal or hourly wages rather than salary. In other words, we should find that the employer was compensating the employee for the task at hand or the actual time spent while engaged in the activity." We find the rationale applied in *Hargrave* applies here because, although the employees here were not paid salaries, they were paid for a period of time during which they were not performing work for their employer. Applying this rationale, we find that this factor does not weigh in favor of a finding that Mr. Smith was in the course and scope of Roclan's employment at the time of the accident because he was not engaged in or being compensated for a specific task.

Ms. Senac also argues that Mr. Smith was compelled to acquiesce with Mr. Cormier's request because Mr. Cormier was his supervisor. She relies on *St. Paul Fire & Marine Ins. Co. v. Roberts*, 331 So.2d 529 (La.App. 1 Cir. 1976), as support for her argument. In *Roberts*, the court held that an employee who delivered oil, which was required for power saws used in the performance of their employer's business, was in the course and scope of his employment notwithstanding that the delivery was made to his superior's home on Sunday when neither of the men were working. The court first considered the facts therein, explaining:

> Unquestionably, Beach possessed authority to require Roberts to work on a weekend or after ordinary working hours. While Roberts might have refused this particular request or demanded compensation, such action on his part may have jeopardized his position. The question posed is whether a servant who responds to his master's request to perform a *work-related act during off duty hours*, especially where the master may require after hours work of the servant, is acting within the

6

scope and during the course of his employment the same as though the servant had been ordered to perform the task.

*Id.*at 537 (emphasis added).

Mr. Smith agreed when asked that he was instructed**,** "Go wherever we tell you and do what Kim says." However, nothing indicates that Roclan intended this to be construed outside the offshore workplace or that Mr. Smith construed it in that manner, and Mr. Cormier testified that he did not construe it or apply it in that manner. Additionally, Mr. Cormier did not have the authority to fire Mr. Smith, and there is no evidence that as an offshore supervisor, he had authority over Mr. Smith onshore.

Ms. Senac also relies on *Jinks v. McClure*, 344 So.2d 675 (La.App. 3 Cir. 1977), as support for her position. In *Jinks*, this court found that a son's substitution for his father as courier resulted in his and his father's employer being vicariously liable for damages caused by the son's negligence, although the son had completed *his* job duties, because the father's job duties included the courier duties being performed by the son and the father was paid a salary and was provided a company vehicle by the company. Before making this determination, the court observed that "[t]he question of whether an act is within the scope of an employer's business must be considered in the light of the particular circumstances, which indicate whether the act *promotes* the employer's business. *Id*. at 685. No evidence even suggests that Mr. Smith's driving Mr. Cormier home promotes Roclan's business in any way.

The remaining factors also do not support Ms. Senac's position. There is no relationship between the time, place, and purpose of Mr. Smith's driving Mr. Cormier home and his service to Roclan, which provides offshore construction services. Nor is there a relationship between this act and Roclan's business. While Mr. Cormier

7

may have personally benefitted from Mr. Smith's act, Roclan did not. Furthermore, there is no indication that Roclan expected Mr. Smith to drive Mr. Cormier home as part of his employment, and Mr. Cormier testified that he considered the act as a favor, not employment related.

Ms. Senac has failed to establish that she can prove at trial that Mr. Smith was in the course and scope of his employment with Roclan. The only factual support for her contention is that he was being paid wages at the time of the accident, and we have explained why that factor is insufficient to carry her burden of proof. Furthermore, she has failed to establish any of the other factors pertinent to a determination that the accident occurred within the course and scope of Mr. Smith's employment with Roclan. Accordingly, the trial court's grant of summary judgment was not error.

### *Disposition*

The judgment of the trial court is affirmed. All costs are assessed to Claudia Senac.

**AFFIRMED.**