STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

17-853


KAREN SUE THIBODEAUX

VERSUS

GEICO CASUALTY COMPANY, ET AL.


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2015-1253
HONORABLE LAURIE A. HULIN, DISTRICT JUDGE

**********

PHYLLIS M. KEATY
JUDGE

**********

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, Phyllis M. Keaty, John E. Conery, and Van H. Kyzar, Judges.


Conery, J., concurs in part, dissents in part, and assigns reasons.


AFFIRMED.

Gregory Carl Weiss
Weiss & Eason, L.L.P.
Post Office Box 8597
Mandeville, Louisiana  70470
(985) 626-5358
Counsel for Defendant/Appellant:
    Walgreen Louisiana Company, Inc.

**Ann Marie LeBlanc**
**Caraway LeBlanc, L.L.C.**
**3936 Bienville Street**
**New Orleans, Louisiana  70119**
**(504) 566-1912**
**Counsel for Defendant/Appellant:**
  **Walgreen Louisiana Company, Inc.**

**David L. Viviano**
**Jeffery J. Guidry**
**Law Office of Jamie Bankston**
**4000 South Sherwood Forest, Suite 403**
**Baton Rouge, Louisiana  70816**
**(225) 368-1494**
**Counsel for Defendant/Appellee:**
  **Vivian Boutte**

**Blake R. David**
**Robert B. Brahan, Jr.**
**Broussard & David, LLC**
**Post Office Box 3524**
**Lafayette, Louisiana  70502-3524**
**(337) 233-2323**
**Counsel for Plaintiff/Appellee:**
  **Karen Sue Thibodeaux**

**KEATY, Judge.**

Defendant, Walgreen Louisiana Company, Inc, (Walgreens), appeals a judgment denying its motion for summary judgment and granting the plaintiff's cross-motion for partial summary judgment based upon its finding that Walgreens is vicariously liable for any injuries or damages sustained by plaintiff as a result of an automobile accident caused by a Walgreens employee. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

Plaintiff, Karen Sue Thibodeaux, was involved in a May 2, 2014 automobile accident in Lafayette, Louisiana, when her vehicle was struck by another vehicle being driven by Vivian Boutte, who was at the time employed by Walgreens. The accident occurred as Ms. Boutte was headed back to her home in Napoleonville after attending a training course recommended by her boss. A police officer who responded to the scene issued a citation to Ms. Boutte for failure to yield. As a result of the injuries she sustained in the accident, Plaintiff filed suit against Ms. Boutte and her automotive liability insurer, GEICO Casualty Company. Plaintiff also named Walgreens as a defendant, alleging that Ms. Boutte was in the course and scope of her employment with Walgreens when the accident occurred, thus making it vicariously liable for the damages caused by Ms. Boutte's actions. Walgreens denied that Ms. Boutte was in the course and scope of her employment at the time of the accident and claimed it had no liability for Ms. Boutte's negligence.

Walgreens and Plaintiff filed cross-motions for summary judgment on the issue of Walgreen's vicarious liability for Ms. Boutte's actions. In her motion for partial summary judgment, Plaintiff also claimed that Ms. Boutte's negligence was the sole legal cause of the accident.

Following a hearing, the trial court rendered judgment on June 1, 2017, denying Walgreens' motion for summary judgment and granting Plaintiff's cross-motion for partial summary judgment based upon its findings: "(1) that Vivian Boutte was in the course and scope of her employment with Walgreens at the time of this May 2, 2014 incident; (2) that Walgreens is vicariously liable for any injuries or damages sustained by plaintiff caused by the incident; and (3) that Vivian Boutte was the sole legal cause of this incident." Walgreens appealed and is now before this court asserting the following assignments of error:[1]

1. The trial judge erred in failing to apply the eight *Orgeron*[2] factors which would have dictated a finding that Ms. Boutte was not in the course and scope of her employment with Walgreens at the time of the incident and resulted in the granting of Walgreens' Motion for Summary Judgment and the denial of Plaintiff's Cross-Motion.

2. The trial judge erred in applying a broad rather than strict construction of the term "course and scope of employment" which would have resulted in the granting of Walgreens' Motion for Summary Judgment, and the denial of Plaintiff's Cross-Motion.

3. Alternatively, the trial judge erred in not finding a genuine issue of material fact as to whether Ms. Boutte was in the course and scope of her employment resulting in the denial of both summary judgment motions.

**Discussion**

"The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action . . . . The procedure is favored and shall be construed to accomplish these ends." La.Code Civ.P. art. 966(A)(2). "After an opportunity for adequate discovery, a motion for summary judgment

---

[1] Walgreens initially sought a supervisory writ from the judgment. This court denied the writ on the basis that Walgreens had an adequate remedy on appeal, as the "granted summary judgment" was immediately appealable under La.Code Civ.P. art. 1915(A); we noted that Walgreens "can assign the denial of its cross motion for summary judgment as an error in the appeal." *Thibodeaux v. GEICO*, 17-562 (La.App. 3 Cir. 7/11/17) (unpublished writ), *writ denied*, 17-1333 (La. 9/15/17).

[2] *See Orgeron v. McDonald*, 93-1353 (La. 7/5/94), 639 So.2d 224.

2

shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3).

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

La.Code Civ.P. art. 966(D)(1). "Appellate courts review summary judgments de novo under the same criteria that govern a district court's consideration of whether summary judgment is appropriate." *Larson v. XYZ Ins. Co.*, 16-745, p. 6 (La. 5/3/17), 226 So.3d 412, 416. Accordingly, we need not address Walgreens' assignments individually, but rather, we will discuss them as necessary in our discussion of whether either Plaintiff or Walgreens' met the burden of proving their entitlement to summary judgment.

Louisiana Civil Code Article 2320 provides, in pertinent part, that "Masters and employers are answerable for the damage occasioned by their servants . . . , in the exercise of the functions in which they are employed."

> In the application of Article 2320, an employer's vicarious liability for conduct not his own extends only to the employee's tortious conduct which is within the course and scope of employment. . . . Generally speaking, an employee's conduct is within the course and scope of his employment if the conduct is of the kind that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer.

*Orgeron*, 639 So.2d at 226-27 (citations omitted).

"An employer is generally not liable for acts committed by its employee while the employee is going to or coming from work." *Voinche v. Capps*, 14-671,

3

p. 5 (La.App. 3 Cir. 12/10/14), 155 So.3d 146, 151. In discussing that general rule, the supreme court noted that "an employee's place of residence is a personal decision not directly controlled by the employer, and treating commuting time as part of the determination of course and scope of employment would remove manageable boundaries from the determination." *Orgeron*, 639 So.2d at 227. As this court noted in *Voinche*, however, application of that general rule "becomes more complicated" when an employer sends its employee to a different location than where that employee normally works. *Voinche*, 155 So.3d at 151. This court has observed:

> As has been stated many times in the jurisprudence and by textbook writers, there is no precise rule or definition by which we can determine in every instance whether the employee driver of a motor vehicle is acting within the scope of his employment. Each case must be decided largely on its own facts, keeping in mind the basic idea that the use of the vehicle at the time must have been in the service of the employer or while about the employer's business.

*Rollins v. New York Fire & Marine Underwriters, Inc.*, 225 So.2d 663, 670 (La.App. 3 Cir. 1969), *writ refused*, 227 So.2d 595 (La.1969).

In its discussion of the course and scope issue in *Orgeron*, the supreme court reiterated its prior pronouncement that "[a]n employer is responsible for the negligent acts of its employee when the conduct is so closely connected in time, place, and causation to the employment duties of the employee that it constitutes a risk of harm attributable to the employer's business." *Orgeron*, 639 So.2d at 227 (citing *LeBrane v. Lewis,* 292 So.2d 216 (La.1974)). Thereafter, the *Orgeron* court provided a non-exclusive list of eight factors courts should assess "in determining whether the employee's conduct is employment-rooted":

> [T]he payment of wages by the employer, the employer's power of control, the employee's duty to perform the particular act, the time place and purpose of the act in relation to service of the employer, the relationship between the employee's act and the employer's business, the benefits received by the employer from the act, the motivation of

4

the employee for performing the act, and the reasonable expectation of the employer that the employee would perform the act.

*Id.* Unlike the liberal construction courts are to give the phrase "'within the course and scope' of [] employment duties" in workers' compensation cases, a strict interpretation of the phrase is called for where a tort victim seeks to have an employer held vicariously liable for the conduct of its employee. *Senac v. State Farm Mut. Auto. Ins. Co.*, 09-320, p. 4 (La.App. 3 Cir. 10/7/09), 22 So.3d 1124, 1127.

Ms. Boutte's deposition was the primary evidence entered both in support of and in opposition to the cross-motions for summary judgment.[3] Ms. Boutte, a licensed pharmacist, stated that, on the date of the accident, she worked for Walgreens as a salaried employee in its Morgan City location. She explained that her pharmacy manager asked her to attend a training class on how to perform cholesterol testing, a service that Walgreens wanted to offer its customers for a fee. The class was being taught at the Walgreens headquarters in Lafayette, the Walgreens' "scheduler," Rene Nuss, told her that she "needed to come in and get that additional training," and Ms. Nuss made the arrangements for Ms. Boutte to attend that particular training session. She drove her personal vehicle to the training and submitted her mileage for reimbursement. Ms. Boutte confirmed that the Morgan City store where she worked had the equipment needed to do the cholesterol testing that she was being trained to perform. On the day of the accident, Ms. Boutte worked at the Morgan City store until about 1:00 p.m. before driving to attend the training in Lafayette. A Walgreens' employee provided the training, which began at 3:00 p.m. and lasted between thirty and forty-five minutes.

---

[3] In support of its motion for summary judgment, Walgreens also entered into evidence the Accident Report, the Petition, and a report compiled by Walgreens containing the "training classes taken by Ms. Boutte from her personnel file."

Ms. Boutte recalled speaking with a Walgreens' manager for about twenty minutes before leaving for her home in Napoleonville, which was approximately ninety miles from Lafayette. She stated that she was driving cautiously because she "didn't know anything" about Lafayette.

In its brief to this court, Walgreens admits that there are no reported Louisiana cases involving the exact factual situation presented in this appeal. Walgreens argues that application of the *Orgeron* factors should lead this court to reverse the trial court judgment finding that Ms. Boutte was in the course and scope of her employment when the accident occurred. It points out that Ms. Boutte's shift at its Morgan City store had ended approximately three and one-half hours before the accident occurred and that she was not paid wages during her attendance at the training nor for her travel time to and from the training. It admits, however, that Ms. Boutte was reimbursed for her mileage. Walgreens suggests that the training was optional, that Ms. Boutte was not required to attend the training to keep her job, that the training "does not show up in her personnel file," and that the "motivation of Ms. Boutte was entirely personal and specifically to enhance her overall performance as a pharmacist, not to benefit Walgreens." It points out that the 'training was not conducted by either [Ms. Boutte's] pharmacy or district manager, but [by] a Walgreens' employee she did not know" and that testing "equipment used during the training was outdated, so the trainees could not check the results." Finally, Walgreens states that "[n]o cholesterol testing was performed at the store where Ms. Boutte worked through the time she left Walgreens' employment almost two years later, and Walgreens was actually backing off of actually performing these tests in general because it was rarely done at most of its stores."

6

We find little merit to Walgreens' arguments. When an employee is told by a supervisor that he or she needs a certain type of training, that employee can hardly be expected to disregard the suggestion or to inquire whether their job depends upon completion of that training. And while there is often an element of personal enhancement when an employee attends a training class, Walgreens' suggestion that Ms. Boutte attended the class for "entirely personal" reasons borders on the absurd. Even more ridiculous is Walgreens' suggestion that Ms. Boutte's training should have been conducted by a Walgreens' employee that she personally knew. Walgreens puts much emphasis on the fact that no cholesterol testing was ever performed at the Morgan City location where Ms. Boutte worked. We find this logic to be disingenuous, as that information was gained in hindsight, and the fact remains that Ms. Boutte's supervisor asked her to attend the training, which the Walgreens' scheduler set up for May 2, 2014. Moreover, Walgreens could not have offered the testing to its customers if it had not trained its pharmacists in how to conduct such testing, and the fact that it apparently made a business decision to discontinue cholesterol testing, when it never really embraced that endeavor in the first place, can certainly not factor into our course and scope of employment analysis. Similarly, the fact the equipment on hand at its training facility was outdated when Walgreens conducted the cholesterol training of its employees reflects poorly on Walgreens. Finally, because Walgreens controlled what was placed in its employee's records, we attach little significance to the fact that any information regarding Ms. Boutte having completed the cholesterol training was not in her personnel file.

On the other hand, our assessment of the *Orgeron* factors to the facts before us convince us that Plaintiff met her burden of proving the absence of genuine issues of material fact and that she was entitled to judgment as a matter of law

7

finding that Ms. Boutte was in the course and scope of her employment with Walgreens when the accident occurred. The cholesterol training class which was held at Walgreens' headquarters in Lafayette was obviously "related to the service" of Walgreens in "time place and purpose;" Ms. Boutte's act of attending the training bore a strong "relationship" with Walgreens' business; Ms. Boutte's motivation for completing the training was to follow her supervisor's directions; and it is more than reasonable for Walgreens to expect that Ms. Boutte's would "perform the act" of completing the training her supervisor requested that she take. *Orgeron*, 639 So.2d at 227. We note that, because the training occurred in a city that Ms. Boutte was unfamiliar with, the chances of her getting in an accident as she navigated to and from Lafayette were increased. *See Voinche*, 155 So.3d 146.

As Walgreens correctly points out, no single *Orgeron* factor is determinative and the factors must be considered in their totality. Because the majority of the *Orgeron* factors preponderate in favor of us finding that Ms. Boutte was in the course and scope of her employment when the accident occurred, we conclude that Plaintiff's motion for partial summary judgment was properly granted and Walgreens' motion for summary judgment was properly denied.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed in its entirety. All costs of this appeal are assessed against Walgreen Louisiana Company, Inc.

**AFFIRMED.**

KAREN SUE THIBODEAUX

VERSUS

GEICO CASUALTY COMPANY, ET AL.

**Conery, J., concurs in part, dissents in part, and assigns reasons.**

I concur with the majority's decision to affirm the judgment of the trial court denying the motion for summary judgment filed by Walgreen Louisiana Co., Inc. (Walgreens). I respectfully dissent from the majority's decision to affirm the trial court's partial summary judgment in favor of Ms. Thibodeaux and against Walgreens that found Ms. Boutte was in the course and scope of her employment with Walgreens at the time of the subject collision.

"The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action[.]" La.Code Civ.P. art. 966(A)(2). In this case, summary judgment has certainly not secured a "just, speedy, and inexpensive determination" **of this action**. Instead, it has caused extensive delays and expensive, unnecessary litigation for all sides. Walgreens filed its motion for summary judgment in April 2017. Now, thirteen (13) months later, we are still arguing about whether this case is appropriate for summary judgment and if either party requests a rehearing and eventual writ to the Louisiana Supreme Court, as may reasonably be anticipated, additional delays and more litigation expenses are certain to follow.

Had this case simply gone to trial, it is highly likely that this case would have been resolved long ago. Walgreens stipulated that Ms. Boutte was at fault. Ms. Boutte, her pharmacy manager, and the Walgreens employee who set up the training in question could have testified in less than one (1) day and the case would have properly been decided on the merits where the trial judge and/or the jury could have weighed the evidence, assessed credibility, and found the facts. Instead, partial summary judgment was granted in favor of Ms. Thibodeaux and that judgment was appealed by Walgreens. Having considered the record presently before us, I find that there are genuine issues of material fact and underlying credibility evaluations that make summary judgment an inappropriate means of resolution. It is well settled that issues of credibility have no place in summary judgment procedures. *See Mouton v. Sears Roebuck*, 99-669 (La.App. 3 Cir. 11/3/99), 748 So.2d 61, *writ denied*, 99-3386 (La. 2/4/00), 754 So.2d 232. It is also "well settled that whether an employee is in the course and scope of employment is a question of fact to be determined . . . on the trial on the merits. This question of fact precludes any granting of a summary judgment." *Sonnier v. Bayou Boudin & Cracklins*, 597 So.2d 1245, 1246 (La.App. 3 Cir. 1992) (quoting *Robinson v. Estate of Haynes*, 433 So.2d 294 (La.App. 1 Cir. 1983).

**FACTS**

On the day of the accident at issue, it is undisputed that Ms. Boutte was a full-time, salaried pharmacist at Walgreens in Morgan City. She clocked out at 1:00 p.m. from her job in Morgan City when her regular shift ended. She then traveled in her own vehicle and on her own time to the Walgreens district headquarters in Lafayette, Louisiana, where she attended an optional forty-five-minute training on cholesterol testing put on by a Walgreens employee.

2

After Ms. Boutte left the Walgreens premises in Lafayette, she was free to go anywhere she liked. She certainly was no longer "under the control" of Walgreens. She was leaving Lafayette in route to her home in Napoleonville when the accident at issue occurred.

Ms. Boutte was not paid wages for her time driving to and from the Walgreens training or for the time spent at the training because she was a full-time salaried employee who finished her regular shift at 1:00 p.m. on the afternoon of the accident to attend the optional training. Ms. Boutte initially testified in her deposition that she was paid mileage for her trip, but this issue is now disputed by Walgreens in a proffer it made.

Counsel for Ms. Thibodeaux claims that Ms. Boutte was contacted by the Walgreens' "scheduler," Ms. René Ness, about the need for her to attend the training. According to Ms. Boutte's deposition testimony, Ms. Ness told her she "needed to" and "probably should" get the additional cholesterol training. However, despite evidence supporting the fact that "the scheduler" said Ms. Boutte "needed to" attend the training, it is Walgreens' position that Ms. Ness had no supervisory authority over Ms. Boutte. Ms. Ness was responsible for scheduling part time pharmacists known as "floaters." As a full time pharmacist, Ms. Boutte was not a "floater." Contrary to the majority's statement that Ms. Ness was Ms. Boutte's "boss" and "supervisor," Ms. Boutte's deposition testimony was uncontradicted that at the time of the accident, she was permanently assigned to the Morgan City location as a salaried staff pharmacist and was not a "floater" subject to the supervision of Ms. Ness.

Ms. Boutte's deposition testimony was that she was supervised by the pharmacy manager as well as a district manager, who oversaw the online courses

3

that Ms. Boutte **was required to take to maintain her certification as a pharmacist** and maintain her employment at Walgreens. Records of mandatory courses are kept in Ms. Boutte's personnel file at Walgreens. Ms. Boutte further testified in her deposition without contradiction that the cholesterol training was not a requirement for her to maintain her position or certification as a pharmacist, and the training she received on May 2, 2014, does not appear in her Walgreens' personnel file introduced as part of the summary judgment evidence, which corroborates Walgreens' contention that the cholesterol testing training was voluntary.

Ms. Boutte's deposition testimony is replete with her contention that neither of her direct supervisors ever told her that she was required to attend the cholesterol training on May 2, 2014, and that the training was purely optional, strictly for her own knowledge. Walgreens contends that Ms. Boutte was not in the course and scope of her employment at the time of the collision in question, and the trial court was clearly wrong in denying their motion and granting plaintiff's motion finding that she was.

In considering a motion for summary judgment, the court cannot "consider the merits, make credibility determinations, evaluate testimony[,] or weigh evidence." *Prop. Ins. Ass'n of La. v. Theriot*, 09-1152, p. 3 (La. 3/16/10), 31 So.3d 1012, 1014 (quoting *Suire v. Lafayette City-Parish Consol. Gov't*, 04-1459, p. 11 (La. 4/12/05), 907 So.2d 37, 48).

### The Course and Scope of Employment Question

Louisiana Civil Code Article 2320 provides, "Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." The sole issue before us is

4

whether summary judgment on the course and scope of employment issue was proper for either party under the facts and circumstances of this case. For an employer to be vicariously liable for the actions of their employee, the court must determine whether the "damage occasioned" by the employee was in the "course and scope" of his employment duties. *See Orgeron on Behalf of Orgeron v. McDonald*, 93-1353 (La. 7/5/94), 639 So.2d 224.

In *Orgeron*, the court held that an employee was within the course and scope of employment for purposes of finding the employer vicariously liable when he was in an automobile accident that injured third parties while **driving to a work site**. It explained that "[u]nder the overall circumstances, the risk of harm for any casualty caused by the employee . . . was fairly attributable to the employer" even though the employee was not paid wages or expenses for the trip. *Orgeron*, 639 So.2d at 228.

In a recent decision by our court interpreting the "course and scope" question, Judge Saunders, writing for the panel, succinctly stated the applicable law:

> When considering a motion for summary judgment, the court cannot "consider the merits, make credibility determinations, evaluate testimony[,] or weigh evidence." *Prop. Ins. Ass'n of La. v. Theriot,* 09-1152, p. 3 (La. 3/16/10), 31 So.3d 1012, 1014 (quoting *Suire v. Lafayette City-Parish Consol. Gov't,* 04-1459, p. 11 (La. 4/12/05), 907 So.2d 37, 48). Moreover, although "summary judgments are now favored, **factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor.**"

*Willis v. Medders,* 00-2507, p. 2 (La. 12/8/00), 775 So.2d 1049, 1050 (emphasis added).

A panel of this court further noted, "**Contrary to workmen's compensation cases, courts strictly construe this phrase in cases involving damage claims for personal injuries.**" *Senac v. State Farm Mut. Auto. Ins. Co.*, 09-320, p. 4 (La.App. 3 Cir. 10/7/09), 22 So.3d 1124, 1127 (emphasis added). *See also, White v. Canonge*, 01-1227 (La. App. 5 Cir. 3/26/02), 811 So.2d 1286; *Winzer v. Richards*, 50,330 (La.App. 2 Cir. 1/13/16), 185 So.3d 876; and *Woolard v. Atkinson*, 43,332 (La.App. 2 Cir. 7/16/08), 988 So.2d 836.

In evaluating the course and scope of employment issue in this case, we must determine whether there are any disputed issues of material fact, or inferences from those facts, as to whether the collision between Ms. Boutte and Ms. Thibodeaux "was so closely connected [in] time, place, and causation to [Ms. Boutte's] employment-duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interests." *LeBrane v. Lewis*, 292 So.2d 216, 218 (La.1974).

A panel of this circuit further clarified *Orgeron* and listed four factors for the court to consider, "(1) whether the tortious act was primarily employment rooted; (2) whether the act was reasonably incidental to the performance of the employee's duties; (3) whether the act occurred on the employer's premises; and (4) whether it occurred during the hour[s] of employment." *Edmond v. Pathfinder Energy Servs., Inc.*, 11-151, p. 4 (La.App. 3 Cir. 9/21/11), 73 So.3d 424, 426, *writ denied,* 11-2234 (La. 12/16/11), 76 So.3d 1204. *See also Bowdoin v. WHC Maint. Servs., Inc.*, 17-150 (La.App. 3 Cir. 10/25/17), 230 So.3d 232.

On appeal, Walgreens claims that the trial court did not correctly apply the case law to the facts of this case by failing to apply the required **strict**

6

**construction** necessary when the fault of the employee involves injury to a third party. Walgreens further claims that the trial court then failed to find that there were genuine issues of fact on the issue of whether Ms. Boutte was in the course and scope of her employment at the time of the collision. I agree.

The trial court ruled from the bench in denying Walgreens' motion for summary judgment and granting plaintiff's motion. It succinctly stated, "Well, after reading the memorandum and considering all of the evidence that's been introduced into this Court, it's very clear to me that the training…. that Ms. Boutte attended was employment related as well as to the benefit of her employer." With all due respect, the trial judge's cryptic finding misses the mark. This is not a workers' compensation case, and the accident at issue did not occur during the training or at Walgreens. In considering the four factors that determine the course and scope issue stated by the supreme court in *LeBrane*, 292 So.2d 216, and clarified in *Edmond*, 73 So.3d 426, the third and fourth factors, "whether the act occurred on the employer's premises," and "whether it occurred during the hours of employment," are not at issue here. The accident at issue did not occur on the employer's premises nor during the hours of employment.

A panel of this court in *Jack v. McFarland*, 15-405, p. 6 (La.App. 3 Cir. 10/7/15), 175 So.3d 1169, 1173, discussed the "wages" issue, and stated:

> This court has determined that factor one, payment of wages, "as contemplated by the supreme court refers to piecemeal or hourly wages rather than salary." *Hargrave v. Delaughter*, 08-1168, p.7 (La.App. 3 Cir. 3/4/09), 10 So.3d 245, 250. Instead, when looking at wages, the court should focus on whether the employee was being compensated for the task and the time spent engaging in activities on behalf of the employer. *Id*. If not, any salaried employee would be within the course and scope of employment at all times.

It is undisputed that Ms. Boutte was not being paid wages by Walgreens at the time of the accident that occurred. She had finished her regular shift as a pharmacist in Morgan City at 1:00 p.m. and had "clocked out." It is likewise undisputed that Ms. Boutte was not required by her immediate supervisors to attend the training course. Further, even if the training was mandatory, it was over, and Ms. Boutte was free to go anywhere she liked. The collision occurred away from Walgreens' work premises in Lafayette and after the training had ended. She was driving back from Lafayette to her home in Napoleonville when the accident occurred.

### Was the tortious act primarily "employment related" and "reasonably incidental to the performance of the employee's duties?"

One indication that courts have considered in determining whether the acts of the employee were work related is whether the employee was paid mileage by the employer at the time of the alleged negligent act. Ms. Thibodeaux's counsel cited the case of *Michaleski v. Western Preferred Casualty Co.*, 472 So.2d 18 (La.1985), which preceded the supreme court's opinion in *Orgeron,* as relevant to an analysis of whether the accident off work premises was within the course and scope of Ms. Boutte's employment.

However, in the *Michaleski* case the supreme court actually reversed the appellate court's affirmation of a summary judgment in favor of the employer and remanded the case to the trial court for further proceedings. The ruling of the supreme court in *Michaleski* reversing summary judgment in favor of the employer required an analysis of whether there was **a substantial connection** to the work of his employer and the employer's expectations of its employees. The employee

8

driver alleged to be at fault was an offshore worker who was temporally working at a land rig site. The supreme court stated:

> An oil company employee, working "seven days on" with living quarters and a food and gas allowance furnished by the employer, who is returning to the work place from a necessary trip for himself and a co-worker to eat is in the course of his employment. Such journey is necessitated by the employment, since all the men had to leave the rig site to purchase groceries or a meal. . . .
>
> Returning from a trip to buy food was an activity arising out of the nature of the employment. The employer anticipated the necessity of these temporary absences, because it compensated the employees with a per diem for their food and gasoline expenses. All of these employees were required to obtain meals or groceries away from the rig site and were furnished an allowance for that purpose. Leger did not deviate either in route or time on his errand. See *Wright v Romano*, 279 So.2d 735 (La.App. 1 Cir. [ ]), *writ den.[ied]*, 281 So. 2d 757 (La.1973).

*Id.* at 21.

Unlike the majority opinion in this case, the supreme court in *Michaleski*, 472 So.2d 18, reversed an employer's summary judgment motion that Mr. Michaleski was not in the course and scope of his employment. The supreme court properly remanded the matter to the trial court for further proceedings.

Counsel for Ms. Thibodeaux nevertheless argues that the reasoning in *Michaleski* supports a finding that if Walgreens paid mileage to Ms. Boutte, **she necessarily was in the course and scope of her employment with Walgreens**. However, a number of Louisiana courts have held that payment of mileage or travel expenses is not the determining factor in such cases. In *Landry v. Fincke*, 98-90 (La.App. 3 Cir. 5/20/98), 714 So.2d 826, both the trial court and a panel of our court found that an employee was in the course and scope of his employment at the time of an accident away from the work premises. The facts in *Landry*, much stronger than in this case, were undisputed that the employee was paid a car

9

allowance and given a credit card for his business travel. At the time of the accident he was returning from a work-related trip delivering materials and performing an inspection at a company job site.

The supreme court granted writs and reversed, stating, "Judgments of the courts below granting partial summary judgment in favor of the plaintiffs are vacated and set aside. There are genuine issues of material fact. Case remanded to the district court for further proceedings." *Landry v. Fincke*, 98-1685 (La. 10/9/98), 726 So.2d 14.

Similarly, in *Winzer v. Richards*, 50, 330, pp. 6-7 (La.App. 2 Cir. 1/13/16), 185 So.3d 876, 880-81 (emphasis added), the second circuit recently summarized the law in this area as follows:

> Liability should not be broadly imposed on an employer for the torts of his employee where the employer is not himself at fault. As a result, **employers are only held liable for the physical acts of their employees over whom they have control, as opposed to workers over whose movements an employer has no right to control.** *Woolard v. Atkinson,*[43,322 (La.App. 2 Cir. 7/16/08), 988 So.2d 836]; *Keen v. Pel State Oil Co., Inc.*, [332 So.2d 286 (La.App. 2d Cir.1976), *writ denied*, 333 So.2d 234 (La.1976).]
>
> **An employer controls the movements of employees when they are performing duties for the employer and only when this right to control exists may vicarious liability be imposed.** When employees are performing functions of their employment, it is as though the employer acts through the employee. The employer receives the benefit of those acts and so he must shoulder the liability for any wrongs committed during the performance of the acts. *Woolard v. Atkinson,*[ ]; *Keen v. Pel State Oil Co., Inc.*[]
>
> **The general rule is that an employee, in going to and from work, is not considered as acting within the course and scope of his employment so as to render the employer liable to third persons for the employee's negligence.** *Alford v. State Farm Auto. Ins. Co.*, 31,763 (La.App.2d Cir.5/5/99), 734 So.2d 1253, *writs denied,* 99-1435, 99-1595 (La.9/3/99), 747 So.2d 544, 548; *Woolard v. Atkinson*[.]
>
> An exception to this general rule may apply when an employer

provides the transportation used by the employee to go to and from work, the employer provides expenses or wages for the time spent traveling in the vehicle, or the operation of the vehicle is incidental to the performance of some employment responsibility. *Woolard v. Atkinson,* [ ]; *Black v. Johnson*, *supra*.

**With reference to travel expenses, it is well settled that mere payment of these expenses without an express or implied agreement to furnish transportation does not place the employee within the course of his employment while going to and returning from work when such payments bear no relation to actual travel expenses and are intended only as an inducement to persuade persons to work at a particular job site.** *Yates v. Naylor Indus. Servs., Inc.*, 569 So.2d 616 (La.App. 2d Cir.1990), *writ denied*, 572 So.2d 92 (La.1991); *Tarver v. Energy Drilling Co.*, 26,233 (La.App.2d Cir.10/26/94), 645 So.2d 796.

In the case of *Bowdoin v. WHC Maint. Services, Inc.*, 230 So.3d 232, a panel of this court reversed a summary judgment granted in favor of the plaintiff, Dustin Bowdoin, and affirmed the denial of summary judgment in favor of the defendants WHC Maintenance Services, Inc. (WHC) and its insurer AIG Specialty Insurance Company. In *Bowdoin*, 230 So.3d 232, we found that there were disputed issues of material fact that precluded summary judgment on the issue of whether Devin Badon was in the course and scope of his employment with WHC when the accident causing severe injuries to Mr. Bowdoin occurred.

The *Bowdoin* court found after reviewing the record:

[T]here is conflicting testimony as to whether Badon was directed by WHC to travel to Louisiana to retrieve Bowdoin for work on the next WHC project. Badon testified that he was directed to do so while this testimony was contradicted by the testimonies of WHC employees Rusty Smith and Chris Aguillard.

*Id.* at 237.

The *Bowdoin* court found that in order to grant summary judgment, the trial court would have to give credence to either Badon or Smith and Aguillard. Therefore, "such a finding requires a credibility determination made to evaluate or

11

weigh testimony which is impermissible when considering the merits of a motion for summary judgment." *Id.* at 237. The case was remanded to the trial court.

Even if the payment of mileage were to be considered as an indication of an employment related act, Walgreens argues in its brief, in pertinent part:

> Since the filing of Walgreens' motion and plaintiff's cross motion and **before the discovery deadline**, Walgreens learned that Ms. Boutte was not paid mileage, a fact that is attested to in **an affidavit she executed and is supported by Walgreens' business records.** Should this court reverse the granting of plaintiff's motion for summary judgment, Walgreens will have the opportunity to introduce that evidence below. (Emphasis added).

Counsel for Ms. Thibodeaux responded in brief and stated:

> Although Walgreens contends in Footnote 25 of its brief that it recently "learned that Ms. Boutte was not paid mileage," no such evidence has ever been properly introduced to substantiate that allegation and any reference to any such purported evidence must be disregarded and ignored for the purposes of this Appeal. The undisputed record evidence is that Ms. Boutte was paid for the mileage expense related to the Walgreens' training session at issue here.

In *Harris v. Aetna Insurance Co.*, 509 So.2d 486, 489 (La.App. 3 Cir. 1987) (emphasis added), a panel of our court stated: "[T]his court will only review issues which have been submitted to the trial court and raised in specifications or assignments of error, **unless the interest of justice clearly requires otherwise**."

In this case, because of **plaintiff's insistence** that the mileage issue is of critical importance, it can certainly be argued that in the "interest of justice," our court can and should order the record supplemented to include Ms. Boutte's supplemental affidavit in question. Uniform Rules—Courts of Appeal, Rule 1-3.[1] However, the supplemental affidavit issue aside, there are genuine issues of fact as to whether Ms. Boutte was in the course and scope of her employment with

---

[1] Ms. Boutte's statement in her deposition as to payment of mileage by Walgreen's was undoubtedly a mistake, which she corrected in her proffered affidavit after review of Walgreens' records.

Walgreens at the time of her after hours off premises collision with Ms. Thibodeaux, and, if this case is remanded, whether she was paid mileage may be one of the factors in a judge or jury's decision on the merits. It is not the determining factor in this summary judgment decision.

It is significant to note that the deposition of Ms. Boutte was offered by both parties in support of and in opposition to the cross motions for summary judgment. Both attorneys did an excellent job of questioning Ms. Boutte in her deposition and then quoting excerpts from her deposition that supported their arguments. Counsel for Ms. Thibodeaux claims it is undisputed that Ms. Boutte was required to attend the training in Lafayette, La., because in her deposition in response to his question she stated that Walgreens' scheduler, Ms. Rene´ Ness said, "you need to come on in and get this training."

Counsel for Ms. Thibodeaux also argued that the cholesterol training Ms. Boutte received was done by Walgreens to benefit Walgreens during Ms. Boutte's employment. Based on Ms. Boutte deposition testimony, the Morgan City location did have the necessary equipment to do cholesterol testing, and her co-worker Mr. Paul Taylor, had completed the training necessary to do the testing, if required. Ms. Thibodeaux's counsel ably argues that it was in Ms. Boutte's interest, as well as that of Walgreens, to have Ms. Boutte certified to do the cholesterol testing if needed. He argues that Ms. Boutte's travel to and from the training was necessary and incidental to her employment with Walgreens and the trial court's decision finding that she was in the course and scope of her employment should be affirmed.

However, in response to questions by Walgreens' attorney, Ms. Boutte also testified in that same deposition that her pharmacy manager and her district

13

manager, both her immediate supervisors, did not tell her she had to go to the training in Lafayette. The training was not mandatory and was not a part of the training that was required for her to maintain her employment and certification at Walgreens:

> Q. So when you were scheduled to -- when you -- René Ness scheduled you to take this course, this was something that you decided that you wanted to do on your own?
> A. Yes
>
> Q. Okay. But nobody at Walgreens was making you take that course?
>
> A. No.

Additionally, as previously indicated, Ms. Boutte's employment records submitted in support of Walgreens' motion for summary judgment includes all of her employment mandated training and does not list the cholesterol training on May 2, 2014.

Further, factor two in *Edmond*, 73 So.3d at 426, "whether the act was reasonably incidental to the performance of the employee's duties," requires an analysis of whether the training Ms. Boutte received in Lafayette was "reasonably incidental to the performance" of Ms. Boutte's duties. Ms. Boutte testified in her deposition that the cholesterol training at the Walgreens headquarters she attended had never been utilized at the Morgan City location where Ms. Boutte was permanently assigned as a pharmacist, both before the accident and after her employment ended almost two years after the accident in question. According to Ms. Boutte's deposition testimony, she attended the training for her own knowledge, not because it was required of her or was of benefit to Walgreens.

I would find that the trial court erred in weighing the evidence and making a credibility determination when it found that there is no genuine issue of fact as to

14

whether the training in Lafayette was required, or "primarily employment rooted[,]" and whether Ms. Boutte was still "in the course and scope of employment" for Walgreens when the accident occurred. *Edmond*, 73 So.3d at 426. Again, it is undisputed that the training was over, and Ms. Boutte was free to go anywhere she liked when the accident occurred. Walgreens exercised no control whatsoever over her movements.

I would further find that there is a genuine issue of material fact as to the benefit, if any, Walgreens received from Ms. Boutte's voluntary cholesterol training and whether that benefit makes the training "reasonably incidental to the performance of the employee's duties," sufficient to find her to be in the scope of [her] employment when she was driving home after completion of the training. *Edmond*, 73 So.3d at 426; *See also Winzer*, 185 So.3d 876*; Woolard v. Atkinson*, 988 So.2d 836; and *Landry*, 726 So.2d 14. As stated in *Willis*, 775 So.2d at 1050, "factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor." Strict construction applies in cases involving vicarious liability to third parties. *Senac*, 22 So.3d 1124. Payment of mileage is not determinative. *Winzer*, 185 So.3d 876.

Since Ms. Boutte's deposition is the primary evidence submitted, I would submit that the trial court and the majority erroneously weighed the seemingly conflicting statements contained therein and made credibility determinations and factual findings that cannot be made in a summary judgment context. *See Prop. Ins. Ass'n of La.*, 31 So.3d 1012. These issues should be resolved at a trial on the merits where the fact finder can hear firsthand all pertinent evidence, weigh the evidence, and make proper credibility determinations and factual findings.

**CONCLUSION**

I would find that genuine issues of material fact require the reversal of Ms. Thibodeaux's motion for partial summary judgment finding that Ms. Boutte was in the course and scope of her employment with Walgreens such that Walgreens is vicariously liable for the damages caused by Ms. Boutte in the collision with Ms. Thibodeaux. For the same reasons, I agree with the majority to affirm the trial court's denial of Walgreens' motion for summary judgment on this issue.